M'Kean,
 
 Chief ju
 
 stice:
 

 This case is, in brief, as follows :—The British
 
 stoop
 
 Active had been captured as prize on the high seas, in September, 1778, and was brought into the port of Philadelphia, where the was libelled in the Court of Admiralty of the State, held before
 
 George
 
 Ross, Esq. the then Judge,
 
 on
 
 the 18th day of the same month. The four persons, for whose use this action is brought, claimed the whole vessel and cargo, as their exclusive prize; but
 
 Thomas
 
 Huston, master of the brig Convention, a vessel of war belonging to the State of Pennsylvania, claimed a moiety for the States, himself, and crew; and
 
 James
 
 Josiah, master of the stoop
 
 Gerard,
 
 a private vessel of war, claimed for himself, owners, and
 
 *161
 
 crew, a fourth part, allowing a fourth for the four persons before named.
 
 All the claimants were citizens of the United States.
 
 The libels were tried by a Jury, on the 15th of
 
 November,
 
 1778, and a general verdict given, in the proportions above mentioned, which was confirmed by the sentence of the Court.
 
 Gideon Umstead
 
 and the other three persons, were
 
 American
 
 mariners on board the Active; they had risen upon the mailer, and confined him and the other mariners in the cabin, whera contest was kept up for the command of the vessel. The
 
 Convention
 
 and
 
 Gerard
 
 came up with her, and the question was, whether the four
 
 American
 
 mariners had subdued the rest of the crew before these vessels came in fight; that is, whether hostilities had then ceased? The jury were of opinion, they had not, and gave the verdict accordingly.
 

 Gideon Umstead
 
 and the three other mariners appealed from the sentence, to the Court of Appeals of the
 
 United States,
 
 which, on the. 15th of
 
 December
 
 following, reversed the sentence of the Judge of the Admiralty, and decreed the whole to the appellants. The Judge refused obedience to the decree of reversal, and paid a moiety of the net proceeds of the prize into the treasury of the State, taking a bond of indemnity frothe defendant in this action, as treasurer of the State, upon Which bond this action is brought. The Executors of Judge
 
 Ross,
 
 the obligee, having been previously issued in the Court of Common Pleas, for the county of
 
 Lancaster,
 
 in this State, for the money so paid, and judgment being obtained against them by default, without any
 
 knowledge
 
 of the defendant.
 

 Thereupon several questions have been made, which may be stated as follows:
 

 1st. Had the Court of Appeals jurisdiction to investigate facts, after a trial and general verdict by a Jury, and to give a contrary decision, without the intervention of another Jury?
 

 2d. Had the Court of Common Pleas of
 
 Lancaster
 
 county jurisdiction in the action by
 
 Umstead
 
 and others, against thExecutors of the Judge; or should not the decree of the Court of Appeals have been, carried into execution by that Court, or the Court of Admiralty, without the aid or interference of any common law court?
 

 3d. Can an action be maintained on this bond, the condition whereof is virtually to disobey the Court of Appeals, and the laws of the land, if that Court had of tight a power to decide contrary to the general verdict of a Jury? And, can the plaintiffs, without having defended, or given notice to the present defendant of the suit in the Court of Common Pleas, support an a action on this bond?
 

 I conceive it proper to premise, that I took notice at the time this action was first brought to trial in this Court, “that when
 
 *162
 
 the business was before the Court of Appeals of the
 
 United States,
 
 in
 
 December,
 
 1778, I had the honor to be President of that Court; but declined fitting on account of my connection with this State as Chief Justice, and otherwise; and that the same reason still subsitled. That the next thing to giving a righteous judgment, was to endeavor to give general satisfaction, which circumstance might not probably be attained by our decision of the present controversy, both Court and Jury being in some measure interested, as they were all citizens of Pennsylva
 
 nia.
 
 For these reasons, I expressed a with, that, some mode might be adopted for trying the cause in the Supreme Court of the
 
 United States.”
 
 This proposition was then asiented to, and a Juror withdrawn; but, it seems, our expectations have been disappointed, and we are obliged, at last, to decide the controversy.
 

 • To determine the firft queftion, we muft take into ccnfidera-lion the a£t of
 
 Congrefs
 
 for ereding tribunals competent to determine the propriety of- captures, paiTed- the 25th
 
 November
 
 1775, the fourth fedion of which is in ihefe words :
 

 "That it be, and hereby is recommended, to the several Legislatures in the
 
 United
 
 Colonies, as soon as possible, to erect Courts of Justice, or give jurisdiction to the Courts
 
 n
 
 ow in being, for the purpose of determining concerning the captures to be made aforesaid,
 
 and to provide, that al
 
 l
 
 trials in such case be had by a Jury, under such qualifications as t
 
 o
 
 the respective Legislatures shall seem expedient.”
 
 The sixth section provides; “that in
 
 all cases
 
 an appeal shall be allowed to the
 
 Congress,
 
 or to such person or persons as they shall appoint for the trial of appeals, &c.”
 

 The act of General Assembly, passed the 9th of September, 1778, intitled “an act for establishing a Court of Admiralty,” allows appeals from that Court in all cases, unless from the determination or finding of the facts by the Jury, which was to be without re-examination or appeal.
 

 The
 
 Congress
 
 on the 15th of
 
 January,
 
 1780, resolved
 
 (inter alia)“
 
 that the trials in the Court of Appeals be according to the usage of nations,
 
 and not by Jury.”
 
 This has been the
 
 practice
 
 in most nations, but the law of nations, or of nature and reason, is in arbitrary states enforced by tile
 
 royal
 
 power, in others, by the
 
 municipal law
 
 of the country; which latter may, I conceive, facilitate or improve the execution of its decisions, by any meanthey shall think bell; provided the great universal law remains unaltered. Now, why may not a fact, respecting the capture from—an enemy by citizens of the same State, and in which question no foreign nation, or person, is concerned, be determined by a Jury, as well as in other cases? This mode of ascertaining a fact done on the high seas, to wit, who were the captors of a prize, when
 
 *163
 
 the contending parties are all citizens, or subjects of the same country, seems to be as reasonable, as in disputes about property, acquired on land. I confess, I do not see how the law of nations is counteracted, or infringed by it.
 

 In
 
 England,
 
 if piracy was Committed by a
 
 subject,
 
 it was held a species of treason, being contrary to his allegiance by the ancient common law; if by an
 
 alien,
 
 it was held to be felony. Formerly it was cognizable by the Admiralty Courts, which proceed by the rules of the civil law; but the statute 28
 
 Henry
 
 8. c. 15. established a new jurisdiction for this purpose, which proceeds according to the course of the Common Law. Here is a precedent of an act of Parliament changing the common mode of trial in Europe, and introducing the trial by Jury, which remains in force and practice to this day. If this can be done, where life is the state,
 
 a fortiori,
 
 it may be done in matters of
 
 meum et
 
 tuum.
 

 It, then, appearing to me, that the
 
 Congress
 
 and Legislature of
 
 Pennsylvania
 
 had power and authority to make the alteration, in the mode of trial, of facts litigated between citizens, it remains to be enquired, whether the verdict in the present case was capable of re-examination by the Court of Appeals, without
 
 another Jury,
 
 The genius and spirit of the Common Law of England, which is law
 
 in Pennsylvania,
 
 will not suffer a sentence or judgment of the lowest Court, founded on a
 
 general verdict,
 
 to be controuled or reversed by the highest jurisdiction; unless for error in matter of law, apparent upon the face of the record. 3
 
 Blackst.
 
 330. 379. 1
 
 Wils.
 
 55. This is enforced by the act of Assembly of the 9th of
 
 September,
 
 1778, in clear and express words, in the very case under consideration; which act was passed in compliance with the act of
 
 Congress
 
 of the 25th
 
 November,
 
 1775, and allows an appeal in all cases, unless from the verdict of a Jury; having a reference to the subject matter, and meaning that the facts should not be re-examined, or appealed from; but that an appeal might be made notwithstanding, with respect to any error in matter of law. The advantage of
 
 viva voce
 
 evidence over written, in the investigation of truth, will hardly be controverted at this day in the
 
 United States; and
 
 the Court of Appeals had not the opportunity of seeing the witnesses on the trial, or of so well knowing the credit due to them, respectively, as the Jury.
 

 For these reasons, and others, which I shall omit for the sake of brevity, l am sorry to be obliged to day, that, in my judgment, the decree of the Committee of Appeals was contrary to the provisions of the
 
 act
 
 of Congress, and of the General Assembly, extrajudicial, erroneous and void. I am strengthened in this opinion by the true construction of the resolve of
 
 Congress,
 
 of the 15th
 
 January,
 
 1780, to wit, that the trials in the
 
 *164
 
 new Court of Appeals should be according to the usage of nations, and
 
 not by jury
 
 ; which implies, that the Court of Appeals, prior to this, had, or ought to have, proceeded by Jury trials.
 
 Ad questionem facti non respondent judices, ad questionem juris non respondent juratares,
 
 1.
 
 Inst. 155.
 
 b.
 

 As my opinion on the first question, is in favor of the defendant, it will appear unnecessary to say any thing to the other points; but as they have been strongly insisted upon, I shall briefly notice one of them. It rather seems to me, that the appellants had no other way of obtaining the execution of the decree in their favor, but by the aid of the Court of Appeals, or of Admiralty, and no Court of Common Law has any jurisdiction in the case.
 
 Douglass.
 
 572. 3
 
 Term. Rep.
 
 344 4
 
 Term.
 
 Rep. 382; 400. 1
 
 Dall.
 
 Rep. 221. 1
 
 Wils.
 
 211. And, also, that an action will not lie against a Judge for what he does as such.
 
 Cro. Eliz.
 
 80. 397. 1
 
 Mod.
 
 184. 185. 2
 
 Mod.
 
 218.
 
 12 Mod.
 
 388. 391. 1
 
 Ld. Raym.
 
 465. 2
 
 Ld. Raym.
 
 767.
 
 Salk.
 
 397.
 

 Shippen, Ju
 
 stice.
 

 This is a suit brought on an obligatiofrom the defendant to the plaintiffs' testator, for the sum of £22,000, on a special condition for the repayment and restitution of the sum of £11496 9 9, paid by the said
 
 George Ross,
 
 the Judge of the State Court of Admiralty, to the defendant, treasurer of the State of
 
 Pennsylvania,
 
 as the share and dividend of the said State, in and out of the prize sloop
 
 Active,
 
 according to the verdict of the Jury on the trial of the same sloop, in the Admiralty Court of the said State,
 
 in cafe
 
 the said
 
 George Ross
 
 should thereafter, in due course of law, be compelled to pay the same according to the decree of the Court of Appeals in the case of the said sloop
 
 Active,
 
 and for the indemnification of the said
 
 George Ross,
 
 from all actions and demands, which might arise on account of his having paid the said money to the defendant.
 

 As a foundation for the present suit, the plaintiffs produced a record of a recovery in
 
 Lancaster
 
 County against them, for the sum of £3248 4 7 1-4, at the suit of
 
 Gideon Umstead, Artemus White, Aquila Rumsdale,
 
 and
 
 David
 
 Clark, in an action of
 
 assumpsit,
 
 for money had and received by the testator
 
 George
 
 Ross, to the use of them the said
 
 Gideon
 
 Umstead, and others. The judgment appears to have been taken by default, and the damages affected by a Jury of Inquiry.
 

 It is stated in the case, that the defendant had no notice of this, recovery ’till after the final judgment. It, therefore, seems to have been agreed, that whatever defence the defendant might have made, if he had been privy to that action, he may avail himself of in this. Two principal questions arise on the case.
 

 1st. Whether the Court of Appeals of
 
 Congress,
 
 were competent to decide the question of prize, and the consequent question, who were the captors to whom the prize should be
 
 *165
 
 adjudged, contrary to the verdict of the Jury, in the State Court of Admiralty?
 

 2d. Was the action of
 
 Umstead,
 
 and others, against the Judge of the Admiralty, for the money lodged in, his Court in consequence of his own decree, cognizable in the Court of Common Pleas in
 
 Lancaster
 
 County?
 

 As to the first question, I own I am not convinced, that the sovereign power of the nation, vested by the joint and common consent of the people and States of the Union, with the exclusive rights of war and peace, and with the consequent, and necessary powers, of judging in the last resort of the legality of captures on the ocean, can, either in reason or found law, be precluded from deciding an appeal, both of fails and law, arising in cases of prize, merely because they had recommended to the States to pass laws to establish Courts of Admiralty, for the trial of prize causes, in which the fails were, in the first instance, to be tried by Jury, according to the course of the common law. 1st. Because, in the nature of things, and according to the course and practice of all civil law courts, all decisions in the Courts in the last resort,
 
 upon
 
 appeals, are made upon a view and full consideration of both fact and law. 2d. Because, otherwise, appeals from the inferior Courts would, in most cases, be vain and nugatory. 3d. Because, otherwise, no steady and uniform rules of decision could be established, and foreign nations could never know, or confide in, the grounds of our decisions; and it does not appear to me material, that, in the present instance, all the parties were
 
 American
 
 citizens. And lastly, because, in the present case,
 
 Congress
 
 has explicitly reserved the power of final decisions upon appeal
 
 in all cases.
 

 As to the second question, whether an action is sustainable in the Court of Common Pleas in behalf of
 
 Umstead,
 
 and others, against the Judge of the Admiralty? for the money he distributed according to his own decree, I acknowledge I cannot discover any principle, or authority in law, upon which such an action can be supported. It is not now to be made a question, whether the Courts of Admiralty have not an exclusive jurisdiction over all questions of prize, or no prize; and also who are the captors of prizes, and how distribution shall be made; together with the power of enforcing their own decrees: The cases
 
 of Lindo v. Rodney, Le Caux v. Eden,
 
 and
 
 Camden v. Home,
 
 fully settle the point. The jurisdiction of the Admiralty seems, like wife, to be
 
 exclusive
 
 in many cases, where the question of prize seems to be
 
 at rest
 
 ; as where the Admiralty has decided that a ship taken is
 
 no prize, ex gratia, in
 
 the case of a neutral vessel. In that case it is not competent for a common law Court to sustain a suit for the illegal capture, but a new libel is exhibited in the Admiralty, to compel the captors to account to the captured, 4
 
 Term. R
 
 
 *166
 
 385. So in the case of
 
 Le Caux versus Eden,
 
 an action for false imprisonment would not lie at Common Law, where the imprisonment was merely in consequence of taking a ship
 
 as prize,
 
 although
 
 the ship had been acquitted.
 
 I know of but one case, where the common law Courts have sustained suits for money paid out of the Court of Admiralty, in consequence of a taking as prize, and that is, where the Admiralty has fully liquidated, all demands relating to the proceeds of a prize, and the money remains in the hands of the agents of the captors. In such, cases, actions at law have been supported against the agentsbut it must be ascertained that these are the agents of the real, captors; for, if any thing is left for the Admiralty to settle, as if other persons not represented by the agents claim any part of the proceeds, there the Courts of Law will not interfere. And, this was the case of
 
 Camden versus Home.
 
 4
 
 Term. Rep.
 
 382.
 

 What is the case before us? A judge of an inferior Court of Admiralty condemns a prize, declares who are the captors, and orders a distribution accordingly. On appeal to the Superior Court of Admiralty, that Court reverses his judgment, and, directs a different distribution. The Judge below refuses to obey the sentence, and persists in distributing the proceeds of the prize agreeably to his own decree. A suit is brought here, to compel the Judge to perform the decree of the Superior Court. Was the case, or question, of prize at rest, or was there not something now to be done by the Superior Court to enforce the sentence? Can ours be a proper Court to decide between the sentences of two contending Courts of Admiralty, or to enforce the sentence of either? It is
 
 in
 
 vain to say, the times were such, that the Supreme Court could not, or would not, proceed to extremities with the Judge of the inferior Court. We are not authorised to aid a defective, or unwilling jurisdiction, by assuming an extraordinary power, unknown to the law. Can Judge, in the execution of his own judgment, although contrary to that of a superior Court, he considered as in the situation of an agent receiving the money of his constituents? Or, if bany strained construction he could be called the agent of those in
 
 whose favor
 
 he decrees, can he be sued as the agent of those
 
 against whom
 
 he decrees? In whatever light I view this question, I am satisfied, that the Court of Common Pleas were incompetent to carry into effect the decree of the reversal of the Superior Court of Appeals, and that an action for money, had and received against the Judge, who distributed the money according to his own decree, could not be sustained in a Court of law.
 

 Yeates, Jus
 
 tice.
 

 On the statement of facts in this case, three points have occurred.
 

 1st. Whether the Court of Appeals of the
 
 United States
 
 had, jurisdiction in the case of the sloop
 
 Active?
 

 
 *167
 
 2d. Whether the Court of Common Pleas, at
 
 Lancaster,
 
 had jurisdiction in the action by
 
 Gideon
 
 Umstead, and others, against the now plaintiffs?
 

 3d. Whether the plaintiffs are damnified, so as to warrant the present proceedings, under all the circumstances of the case?
 

 I will consider the different points, inversedly.
 

 On the 3d. point, I am satisfied by the authorities cited by the plaintiffs’ counsel, that there is sufficient proof of a damnification, to warrant the suit in a common case. The non-payment of money at the day, is a forfeiture of a counter bond, 1
 
 Vent. 261. Cro. El.
 
 672. Putting the obligee in danger of being arrested is a damnification. 3
 
 Bulst.
 
 233. 5
 
 Co.
 
 25.
 
 Cro. Jac.
 
 340.
 

 It was admitted, indeed, on the last argument, that the proceedings at
 
 Lancaster
 
 should be considered as evidence of a damnification; but that the defendant should be let into a full defence in this action. No notice having been given to this defendant of the institution of the suit against the now plaintiff; he is not flopped from saying, that they were not bound in the former action, to pay the money.
 

 On the second point, it has been insisted by the defendant’s counsel, that the Courts of Admiralty having exclusive jurisdiction in cases of prize and their consequences, the Common Pleas at
 
 Lancaster
 
 could have had no cognizance of the action commenced by
 
 Gideon Umstead,
 
 and others.
 

 In the famous case of
 
 Le Cause v. Eden,
 
 Willes, Justice—says: “Where the injury is the necessary and natural consequence of the capture, the Court of Admiralty has the sole and exclusive jurisdiction.”
 
 Doug.
 
 579. Ashurst,
 
 Justice,
 
 observes; “where the Admiralty has jurisdiction of the original matter, it ought also to have jurisdiction of every thing necess
 
 a
 
 rily incidental.”
 
 Ib.
 
 580.
 
 Justice,
 
 in a very elaborate argument infers from all the adjudged cases, “that the Admiralty has a jurisdiction on the question of
 
 prize or not prize,
 
 and its consequences, and that the common law Courts have none.”
 
 Ib.
 
 587. 590. And in
 
 Smart
 
 &
 
 Wolff,
 
 the words of Judge Buller, are; “every case that I know on the subject, is a clear“ authority to shew, that questions of prize and their consequences are solely and exclusively of the Admiralty jurisdiction.” 3
 
 Term. Rep.
 
 344.
 

 In
 
 Lord Camden et al. v. Home,
 
 it is adjudged, that the prize Courts, and Courts of Commissioners of Appeal, have the sole and exclusive jurisdiction of the question of prize and no prize, and who are the
 
 captors.
 
 4
 
 Term. Rep.
 
 382.
 

 In
 
 Done’s
 
 administratrix
 
 v. Penhallow,
 
 and at 1
 
 Dall. Rep. 221.
 
 Mr.
 
 President
 
 expresses himself thus: In this cause, “the vali
 
 *168
 

 d
 
 ity of the sentence of the Court of Appeals is disputed. If we say, it is valid, we, in effect, say, the brigantine is no prize, and wh
 
 o
 
 otherwise, we say the was a prize. We have clearly no authority to say either the One or the other.” And agai
 
 n;
 
 “this is an action to carry into execution the sentence of the Court of Appeals, which we have no authority to do, that being the proper judicature to carry into effect its own sentences.”
 

 These adjudications militate strongly against the jurisdiction of the Court of Common Pleas of
 
 Lancaster
 
 County. The cause of action there, was the immediate and necessary consequence of the vessel’s being taken as a prize.”
 
 1 Dall. Rep.
 
 221. It was, in short, a demand instituted by the plaintiffs, as sole captors of the sloop
 
 Active.
 

 But it has been contended by the plaintiffs’ counsel, that here all parties affirm the same thing, to wit, that the sloop was a prize, and
 
 that
 
 question cannot now possibly arise; which is laid to distinguish it from the several cases cited. And for this purpose,
 
 Henderson v. Clarkson,
 
 determined in this Court, is quote
 
 d,
 
 where die Court held, that an agent for seamen might recover at common law the prize money, due under the decree of the Court of Admiralty of
 
 Pennsylvania.
 

 I find from my notes, that the circumstances were as follow; The plaintiff was appointed agent for forty-three seamen, on board the private fer brig
 
 Holker,
 
 to receive their prize money. The defendant was Marshall of the Court of Admiralty of Pennsylvania, where two of the prizes were libelled, condemned, and sold. The plaintiff, on the 27th December, 1781, gave a bond to the Commonwealth in £250 penalty, conditioned to account faithfully with the seamen, and to pay over the shares unclaimed, within one year, to the use of the corporation of contributors to the
 
 Pennsylvania
 
 Hospital. The Judge of the Admiralty, on that day, also, issued a writ to the defendants, to deliver over the goods and money due to the owners, and seamen, or their agents, on the different prizes; to which he made return, that the goods and money were ready to be delivered over. That suit was brought to recover the prize money due to the plaintiff’s constituents: The Marshall had paid a considerable part, and rendered his account, but some of the items therein were disputed. The Court on full argument resolved, that the agent might, as a common head or center for the captors, and Hospital, under the right acquired by the act of Assembly, of the 8th of
 
 March
 
 , and 22d September, 1780, institute a suit in his own name, as the captors themselves might have done; and as the question respecting "prize or no prize” could not come into controversy, he might recover the money due to them, by the Admiralty decree; they having a vested interest therein, under
 
 *169
 
 the acts of Congress, and the Legislature. The Marshall had returned to the Judge, that he had the goods and money ready to be delivered to the captors, or their agent; and this was held to amount to a written promise, to pay the fame to the plaintiff
 
 Henderson,
 
 as agent of the seamen.
 
 *
 

 The two cases are not analogous; they possess distinct prominent features: In the former case, there was no question, who were the captors, or how the booty was to be divided; there were no discordant decrees of different marine Courts; no dispute respecting the constitutional powers of the judicature, which pronounced the final decree.
 

 Here they all fully exist; and a common Law Court at
 
 Lancas
 
 ter, was called on, to carry into execution the decree of the Court of Appeals, against the executors of the State Judge, and in derogation of the decree he had given, sanctioned by the verdict of a Jury.
 

 •On the fi
 
 rst
 
 point, it is not essentially necessary to give an opinion, whether, if the resolve of
 
 Congress
 
 had been
 
 absolute
 
 and
 
 imperative,
 
 instead of being barely recommendatory, as to the establishment of Courts of Admiralty in the different dates, and the laws of any one State had been repugnant thereto, such resolution would be supreme, and controul the law of the individual Staten Nor shall I attempt to define the former powers of Comng
 
 ress,
 
 by fixing how far they reached,
 
 anterior
 
 to the consederation; which was sent to the different States for ratification on the 17th
 
 Nov.
 
 1777, and finally acceded, to by
 
 Maryland
 
 on the 1st of
 
 March
 
 1781. I am, however, compelled to say, that the powers of
 
 Congress
 
 must necessarily be supposed to have, been co-extensive with the great objects which America then had in view, and competent to protect and advance, the united interests of the whole. It is sufficient in my idea, for the decision of the case before us, to observe, that the present suit resting on the judgment in
 
 Lancaster
 
 county as its basis, if the then plaintiffs were not legally entitled to recover against the executors of Mr.
 
 George. Ross,
 
 the action now before the Court is not sustainable.
 
 3 Term Rep.
 
 377. I have only to add, that it would also have afforded me much pleasure, if this argument had been conduced before the Judges of the
 
 Supreme Court
 
 of the
 
 United States.
 
 We formerly indulged ourselves with hopes of it, when the jury were discharged: in an action between the now plaintiffs’and
 
 Thomas Learning,
 
 in
 
 January,
 
 term last, when the same points came in question. We may be considered, in some remote degree, as parties in the present suit, and the decision of the Federal judges would probably have given more general satisfaction. But the parties have insisted on our opinion; and we are bound
 
 *170
 
 ===to giye it. On the belt confideration, therefore, that 1 h&v‘e been able to beftow.on the fubjeft, I find myfelf conftrained to give,my voice, that judgment be rendered for the defendant.
 

 *
 

 See the case of
 
 Henderson v.
 
 Clarkson, here alluded to,
 
 post,
 
 174. The case of
 
 Ross et al.
 
 Executors v.
 
 Rittenhouse
 
 has been inserted by , mistake of the term when it was argued not when it was decided.