The first process used in courts of admiralty, is to seize the vessel, but here the vessel was not within the jurisdiction of the courts of this country. Let us inquire whether the thing having been done on the high seas gives jurisdiction to the other branch of the admiralty court, called the instance court; and I contend that the latter has a concurrent and not exclusive jurisdiction, and if a court of common law has first got the cause before it, it ought to proceed, and in such a case no prohibition ever did or can issue where the court of common law has the cause before them; no case can be shown where a cause brought in a court of common law was abated, because a court of admiralty had jurisdiction.
I will first show that this branch of the admiralty court cannot have jurisdiction, unless they can proceed in rem. 1 Com., 392 — Godbolt, 260. The first process is against the ship and goods. The same doctrine to be found in 3 Dallas, 186. The cause here reported was dismissed because the vessel was infra presidia, and the court could not proceed in rem.; the prize courts have exclusive jurisdiction, because they decide according to the laws of war and the laws of nations, and it would be very unsafe to trust the municipal courts to decide on those laws. The second branch of the admiralty court, i. e., the instance court, judges on the municipal laws, and consequently has jurisdiction concurrent with the court of common law. (334)
In all transitory actions, by fiction, the cause of action arising in foreign countries is said to have arisen in the country where the suit is brought; 3 Black. Com. . . ., establishes this doctrine, and proceedings of admiralty courts are very familiar to those in the municipal courts, embracing some cases growing out of particular treaties and foreign laws. Formerly complaints were made that the courts of common law had taken jurisdiction of causes arising on the high seas, by a fiction; to these complaints it was answered by the Judges of the courts of common law, that no prohibition has ever been granted; 4 Co. Inst., 134; that the prize courts have no jurisdiction, because the thing is not within their power, and the instance courts have only a concurrent jurisdiction with the courts of common law.
It has been said that the plaintiff ought to sue in the prize court of France. Was he to do so, he would be told that the subject matter never came within their jurisdiction; when, therefore, he cannot sue in *Page 282 
the maritime courts of our own country, and this court has power to give him redress, it surely ought to do it.
It will not show, that for a taking on the high seas, an action will lie in a court of common law, unless the vessel was taken as a prize; Douglas, 603. The case here cited proves that the admiralty court has not exclusive jurisdiction, and had it been otherwise, the court of common law would have dismissed the cause. And this case further shows the clear definition of the prize and instance courts to be such as I have given.
It will be insisted that the vessel was taken as prize, and therefore the courts of admiralty have exclusive jurisdiction; the case states the vessel to have been taken on pretense of prize. The jurisdiction of the court extends to cases of all descriptions, and will proceed unless it is disclosed that another court has exclusive jurisdiction, and the objection to the jurisdiction of the court, put on the record in proper time, which not being done, it gives the court jurisdiction, and they will proceed, and unless the court are apprised that it was taken as prize, they (335) will give judgment. 1 Shower, 6; 3 Mod. Reports, 194 — same case.
I insist upon it, even if the ship was taken as prize, the objection comes too late to oust this court of jurisdiction; it ought to have been pleaded in time. Co. Litt., 127. Whenever a defendant enters a plea which constitutes a general defense, he cannot afterwards be permitted to object to the jurisdiction of the court. 1 Mo., 181; 2 Mo., 273. The jurisdiction of this court attached on the cause immediately on the defendant's pleading the general issue.
If a cause is depending in an inferior court, it ought to appear by the proceedings that the cause is clearly within the jurisdiction of that court, otherwise the judgment will be reversed; but in a court of general jurisdiction, it is too late to make an objection against the jurisdiction after it is admitted by the pleadings.
Admitting that the cause of action here arose on a taking as prize, yet it ought to be shown, and they ought to prove clearly that it was taken as prize, and was a legal capture; and if it be not shown that it was taken as prize, then it must be taken as trespass. If France and Great Britain are at war, and the cruisers of one power take the vessel of a neutral nation, the taking cannot be held as prize, but mere trespass; and this action being in trover creates no difference. If it be alleged that the Bellona had a commission from the French Republic to cruise and make captures, yet it ought to be shown that the taking was in pursuance of the commission; and she certainly had no power to capture American vessels. What does the commission authorize? It can *Page 283 
only authorize the taking of vessels belonging to enemies, or the vessels of neutral nations engaged in contraband trade, and to constitute the taking these as prize, there must be a condemnation by a proper tribunal.
By the treaty made between America and France, whenever a vessel is taken by a French privateer, it must be carried into port to be tried by a French court; and if the captor does not carry it into a French court for trial, the taking to be held a trespass ab initio. By the laws of nations, he ought to carry it into port for trial, in (336) some court of competent jurisdiction; if he does not, the taking is a trespass. This doctrine is to be found in 1 Dallas, 106, and the consequence deducible from his not doing this, is that he is a trespasserab initio.
By the 13th article of the French treaty, it is expressly stipulated: "In order to regulate what shall be deemed contraband of war, there shall be comprised under that denomination gunpowder, saltpetre, petards, match, ball, bombs, grenades, carcasses, pikes, halberts, swords, belts, pistols, holsters, cavalry saddles, and furniture, cannon, mortars, their carriages and beds, and generally all kinds of arms, munitions of war, and instruments fit for the use of troops; all the above articles, whenever they are destined to the port of an enemy, are hereby declared to be contraband, and just objects of confiscation; but the vessel in which they are laden, and the residue of the cargo shall be considered free, and not in any manner infected by the prohibited goods, whether belonging to the same, or different owner." It clearly appears from the conduct of Nadeau, subsequent to the capture, that he never intended to have her tried, and that he did not pursue his authority and commission. Whenever a man acts under an authority, and does not pursue it strictly, he shall be taken a trespasser ab initio. 6 Carpenter's case, 2 Stra., 1184.
The Bellona privateer, commissioned by the Republic of France, in a cruise off the Island of Jamaica, fell in with and captured the brig . . ., loaded in part with sugar and coffee, supposed to be the produce of the British plantations, and without a register on board to designate the country to which she belonged. Under the suspicious circumstances, the privateer took her as and for a prize, carried her into the Island of Cuba, and sold vessel and cargo without the formality of a legal condemnation. *Page 284 
The plaintiff, who was owner of the brig and cargo, instituted (337) an action of trover against the defendant, owner of the privateer, upon this principle, that the defendant is owner, is liable for the acts of the captain, and as the captain illegally took the brig and cargo, the presumption in law is, that the same came to the hands of the defendant, and consequently that he is guilty of the trover and conversion charged in the declaration.
The jury gave a verdict in favor of the plaintiff, subject to the opinion of the Court, whether it has jurisdiction of the cause; and on behalf of the defendant, I am to show that it has not. This principle I shall endeavor to establish upon two grounds:
1. That the privateer, having acted under the orders, and in conformity to the existing regulations of its own government, the owner cannot be made personally liable in any court of this country, to a citizen of a neutral country, for any damages this neutral may have sustained by reason of a capture, however contrary to the law of nations this capture may have been. It is purely a matter of government, and the injured party must apply to government for redress.
2. But admitting, however, that there are courts in this country competent to give redress, and to which the plaintiff might have applied for relief, I contend that the Federal district admiralty court has sole jurisdiction in the present case, and that a court of common law can take no cognizance thereof, but that the admiralty court alone has jurisdiction, exclusive of every common law court whatsoever.
In respect to the first point: The French government, conceiving the interests of their nation materially affected, and the safety of their commerce endangered in some essential particulars, by the operation of some clause in the treaty entered into between this country and Great Britain, passed a law authorizing their cruisers and armed vessels to capture neutral, and particularly American vessels having on board any article of British manufacture, or of the growth and produce of their colonies, etc. Under the authority of this act, the privateer captured the plaintiff's brig, justified in such capture by the other circumstances, (338) to wit, the want of a register. If this privateer then has simply pursued the orders of its own government, and in consequence thereof the plaintiff has sustained an injury, I apprehend that it is not in the power of any court in this country to grant relief. Neither ought a court of judicature to take cognizance of such a case. Application should be made to the Executive, by whom compensation will be demanded from the offending nation.
It would be a strange construction of the law of nations, and the thing impracticable in itself, where each and every individual of that *Page 285 
country by whom a capture has been made, liable to the claims of those whose property has been taken upon the high seas, which country has thought proper to pass a law for that very purpose.
If the government to which the sufferer belongs cannot procure justice from the hostile nation, reprisals would be justifiable upon the principles and for the reasons laid down in the case of Hughes v. Cornelius, 2 Show., 232.
One important object of our mission to France was to procure compensation for spoliation and illegal captures.
It is not to be presumed that our envoys would demand, much less that the French Government would consent to a double satisfaction; that is to say, that each injured individual, in a court of this country, should be permitted to obtain satisfaction for his particular damage, and afterwards be entitled to the same amount, through the medium of a treaty. Besides, the courts of the several states, not bound by the law of nations, nor by the decisions of each other, might and most probably would decide differently upon the same subject, by means of which infinite confusion would ensue, in consequence of such contrary adjudications.
2. But admitting, however, that there are courts in this country competent to give redress, I contend that in the present case a court of common law has no jurisdiction whatsoever, not even a concurrent jurisdiction; but on the contrary, that a court of admiralty is the proper tribunal to which the plaintiff ought to have applied for relief; that it has complete and sole jurisdiction, exclusive of all common law courts whatsoever.
There is no principle more firmly established, no point of law (339) better known and understood than this, that a court of common law cannot determine a question of prize or no prize; and further, if the principal taking was as prize, a court of common law cannot entertain jurisdiction of any incident connected with it. On the contrary, if the admiralty had jurisdiction of the original question, they must necessarily determine every circumstance incident thereto.
This has been settled by a series of decisions for ages, and the doctrine has never been shaken even by a single authority. Molloy, new ed., 57, 58, 59, 85; 1 Lord Raymond, 211; Cro. Eliz., 685; 1 Lev., 243; v. Mod., 340; Doug., 595; 3 Term Rep., 323; 3 Blac. Com., 108; 1 Dallas, 221; 2 Dallas, 160; 3 Dallas, 6, 54; 4 Term Rep., 385; Carth., 398; 2 Keb., 360.
Upon the principle, then, that the law is as I have stated it to be, it only remains to examine whether the present case is virtually, as well as in express words, within the authorities cited. This will instantly *Page 286 
appear by referring to the facts: The Bellona privateer, commissioned by the Republic of France, employed in an hostile manner against the subjects of Great Britain, between whom and the citizens of France an open war existed, in conformity to the laws and regulations of its own government, upon the high seas, took the plaintiff's brig as and for a prize. The plaintiff, who claims to be an American citizen, and consequently a neutral, states that this brig and cargo, being neutral property, were not, by the law of nations, liable to capture, and therefore he has brought an action of trover at common law to recover damages for the tort.
What, then, are the Court called upon to decide? Before they can sustain this cause and render judgment for the plaintiff, they must first decide upon the validity of the capture; they must first determine the taking to have been illegal, and of a necessary consequence pronounce an opinion upon the question of prize or no prize.
If the captors were authorized and justified in taking the brig, if she really was liable to capture, and was a good prize, then it is (340) evident that the plaintiff ought not to recover upon the intrinsic merits. But whether the captors were authorized and justified in taking the brig or not, whether the capture was legal or not, and whether she was a good prize or not, are questions I undertake with submission to say never were determined in any court of common law governed upon principles similar to ours; but such cases in every instance have been uniformly declared cognizable in a court of admiralty alone.
View this cause in the gross or in the detail: bring it forward in any form of action whatsoever, whether trover or trespass; analyze it into all its parts, and under every circumstance, still this great and important question, that is to say, Was the plaintiff's brig a legal prize or not, will stand forward, exposed and distinguished, as the most prominent feature of the whole case.
Let the action be what it may, yet this previous question must be first disposed of before the plaintiff can be entitled to a judgment. If this Court render judgment for the plaintiff, they at the same instant pronounce the capture to have been illegal, and the brig no prize. And if in any collateral action such a question can be determined in a court of common law, the admiralty court, by a fiction, may be deprived of jurisdiction in every instance.
It is highly reasonable that such exclusive jurisdiction should be vested in the admiralty courts, and it is founded upon maxims of the best policy. Sovereign independent states, acknowledging no superior, must necessarily resort to some tribunal governed by laws and usages which, possessing no force but by the consent of all, must, when that *Page 287 
consent is obtained, necessarily be binding upon all. This consent is the law of nations, and this tribunal the admiralty court, governed by the law of nations, and not by the municipal law of any particular kingdom or state; for the municipal law is not binding upon any but those who belong to or reside within the limits of such particular kingdom or state; whereas, the law of nations is binding upon the whole world, for the whole world are parties to, and bound by the (341) decrees of an admiralty court.
From these observations, and many others to the same purpose that might be adduced, I hope I may with confidence conclude that this Court, as a court of common law, has not jurisdiction of this cause. Because, in this case, is necessarily involved a question of prize or no prize, which, with all its incidents, are exclusively cognizable in a court of admiralty.
Many objections have been raised to the application of the foregoing principles to the present case, which it will be necessary to examine. These objections may be classed under the following heads:
It is stated by the counsel for the plaintiff:
1. That the Federal district admiralty court is not competent, and does not possess sufficient power to grant the plaintiff adequate relief.
2. That if the admiralty court possesses any jurisdiction, it must be as a prize court, and not as an instance court. That as a prize court it cannot proceed, unless the subject matter, that is to say, the prize itself, be within the reach of the court, for the proceedings are in rem., and not in personam.
3. That the captors did not carry the prize infra praesidia, neither was she legally condemned, consequently the captors are trespassers ab initio, and liable to the original owner in an action of trespass or trover in a court of common law.
4. That the courts of common law have concurrent jurisdiction with the admiralty courts. And although the Superior Court of Common Law will frequently grant a prohibition to the admiralty courts, yet such common law courts will not send a cause originally instituted before them, to be tried in the admiralty.
5. That the defendant ought to have pleaded to the jurisdiction of the common law court, and could not take advantage of this court's want of jurisdiction under the plea of not guilty.
With regard to the first objection, I do not hesitate to declare that if the district admiralty court had not competent jurisdiction, and possessed no power to afford relief in the present case, that a court of common law ought to hesitate some time before it should (342) pronounce that the plaintiff must go without remedy. But on *Page 288 
examination it will be found that the admiralty court possesses full and ample power for this purpose. It is enacted in the 9th section of the Judiciary Bill, that the admiralty court shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. The word civil is here used in a sense opposed to criminal, and embraces every cause cognizable by the tribunal, either on the prize or instance side of the court. 3 Dall., 12, 13.
As to the second objection, it is laid down by the Supreme Court of the United States, in the case of Glass et al. v. The Sloop Betsy et al., 3 Dall., 16, that the admiralty court considered either as an instance or a prize court, possesses all the powers of an admiralty court; and it will appear that there was no circumstance in the present case which could have prevented the plaintiff pursuing his remedy in that court to the utmost extent of satisfaction.
In the first place, in order to obtain a decree for damages, it is not necessary, as I apprehend, even on the prize side of the court, that the subject matter, that is to say, the prize itself, should be within the reach of the court. In some cases it would be impossible, and in others impracticable.
Suppose a privateer, in a manner obviously illegal, should capture a neutral vessel and order her to port, and on the passage the prize should be lost; in this case it would be impossible to proceed in rem. or bring the subject matter before the court, and yet I conceive there can be no doubt but that the original owner of the captured vessel might proceed, by libel, against the captors and recover ample damages for this illegal taking, as completely as if the prize were in the hands of the marshal of the court.
Again, suppose the captors should take a vessel as prize, and sell her in some foreign country without any regular condemnation, and so contrive that she should never come within the reach of the court. (343) In this case, although the subject matter is still in existence, yet by reason of the illegal conduct of the captors, the original owner is entirely prevented from pursuing his claim in rem., and if the doctrine contended for by the plaintiff's counsel be correct, the former owner can never be entitled to satisfaction in this case, although he is deprived of the means, by the captor's own wrong, which the law will not permit.
Upon an examination of the authorities and the practice of the admiralty courts, it seems evident that, in order to entitle the injured party to recover damages for an illegal capture, it is not necessary that the subject matter itself should be before the court — though it may be necessary where restitution is prayed for. *Page 289 
In cases where damages alone are demanded, the practice sometimes is to issue a monition and notify the captors to bring the prize into court. Carth., 398. And upon this, whether it is brought in or not, the complainant goes on to a decree.
In many cases this formality is not required; and it is clearly laid down in the suit of Le Caux v. Eden, Doug., 594; that damages may be recovered in the admiralty courts even for a personal injury sustained in consequence of a capture. In this case there was not the least necessity that the prize itself should be in court; neither were the proceedings inrem., but against the captors personally; so in every instance where damages alone are prayed for.
In Clerke's Prax. Cur. Adm., it appears that the first process usually is, by an arrest of the defendant's person, who is then compelled to enter into a stipulation in the nature of bail, or a recognizance. 3 Blac. Com., 108. And being in court by this process, the complainant is entitled to proceed for such damages as he can make appear he has in any manner sustained, either in his person or goods, by reason of this illegal capture.
Then, I apprehend, both from the reason of the thing and by authorities, I have showed that the District Court possesses all the powers of an admiralty court, either as an instance or a prize court. That although the subject matter, the prize itself, was not and could not have been before the court, yet the present plaintiff might have (344) proceeded in the admiralty court against the defendant inpersonam, by arrest, and recover ample satisfaction for any injury he had sustained; consequently the District Court was competent to afford him full and adequate relief.
As the cause now is before the Court, there is nothing contained in the third objection which can in any manner avail the plaintiff.
The captors carried the prize into a port in the Island of Cuba, under the dominion of the King of Spain, who then was in an alliance offensive and defensive with the French Republic, and both at open war with Great Britain. And nothing is more usual than for two powers so connected to permit their cruisers respectively to carry their prizes to and condemn them in each other's ports. This privilege was granted by France to American privateers, and was the constant practice between the two countries during the Revolutionary War.
Upon this principle, then, the plaintiff's brig was carried as a prizeinfra praesidia.
It does not follow that because a prize is not legally condemned, that the captors are trespassers ab initio; or that they are trespassers in any respect whatever. *Page 290 
The law certainly is this: whenever a vessel has been legally taken, as in the case of a neutral loaded with contraband goods, or endeavoring to enter a port in a state of actual blockade, or an open enemy, the captors are not trespassers in any sense of the word; neither can an action in any form be maintained for this capture.
If the prize has not been legally condemned, the consequence will be this: the original owner may seize her, in the hands of any person, and at any distance of time, wherever she may be found; for until a regular condemnation takes place, the owner is not divested of his property. But still an action of trespass cannot be maintained for the capture, although no condemnation followed, because the taking was at first legal. And the case of the six carpenters, and other cases cited by the plaintiff's counsel, do not in the smallest degree apply to the case of the legal taking of a vessel as prize.
(345) The commission granted to the privateer, authorizes her to take the vessel, goods, etc., of the enemy, and of course the vessels, goods, etc., of those who, by the law of nations, have placed themselves in the situation of an enemy. Then, whether after a legal capture, the prize was carried infra praesidia, or whether she was legally condemned or not, are circumstances of which the original owner cannot take such an advantage as will enable him to maintain an action of trespass; he can only regain possession of his property which, for want of these formalities, has never been altered, and of which he has never been legally divested.
But admitting, for the sake of argument, that the plaintiff's brig, the prize, was not carried infra praesidia, and was not legally condemned, and consequently that damages are recoverable on that account, we are then brought back to the original ground of discussion, and that great question still remains behind: Can a court of common law take cognizance of such a question, and award damages to the plaintiff?
If it be true, as the plaintiff's counsel contend, that unless the prize be carried infra praesidia, and there regularly condemned, the captors are trespassers ab initio, and liable for damages, then I ask, do not these important facts form a material part of the question of prize or no prize? Can this or any other court decree damages in such a case, unless it be first ascertained whether the law requires the prize to be carried infrapraesidia, and also whether it requires a regular condemnation in order to vest the property in the captors? And let me further ask, would not this investigation necessarily lead the Court to decide upon the validity of the capture, and consequently determine, not collaterally and incidentally, but in the very first instance, the question of prize or no prize? *Page 291 
To me it appears impossible to separate the supposed trespass from the principal taking as prize. This would be to divide between two different jurisdictions the same entire transaction.
If all this be true, then I apprehend this third objection of the plaintiff is entirely removed, upon the principle before (346) established, viz.: that a court of common law cannot take cognizance of a case necessarily involving in it a question of prize or no prize.
The fourth objection requires but a short answer. Every authority which has been introduced, and many others which might have been read, lay it down as clear, express, and settled law, that in every case wherein the plaintiff claims damages for a tort committed upon the high seas, if it appear that the inquiry complained of was occasioned by or happened in consequence of a taking as prize, that the courts of common law have no kind of jurisdiction whatsoever, neither of the principal question nor of any circumstance or incident connected with or arising out of it. On the contrary, that the admiralty courts have sole and exclusive cognizance, not concurrent, but exclusive, of all common law courts whatsoever.
And the cases of Le Caux v. Eden, Doug., 594, and Ross et al. v.Rittenhouse, 2 Dall., 160, completely show, that although a suit be originally instituted, even in the highest court of common law, yet if it appear to be a cause of admiralty jurisdiction, they will dismiss it and send it to its proper tribunal for adjudication.
With regard to the fifth objection, I have to observe that the present cause is an action of trover, and it has been repeatedly ruled that the defendant, in an action of trover, can plead nothing except "not guilty and release"; every special plea amounting to nothing more than the general issue. Further, the declaration is in the usual form, and in a plea to the jurisdiction, it cannot appear either by the declaration or plea, whether the court has jurisdiction or not, until the testimony is gone into, and then it would have been too late to take any advantage under the plea.
But without having recourse to the circumstances of this particular case, so far as it involves the question of right pleading, it is sufficient for me to show that the law upon this subject is already settled. Lord Chief Justice Lee, in the case of Rous v. Hazard, lays it down as a clear principle of law, that if to an action of trespass for taking a ship as prize, the defendant pleaded not guilty, the plaintiff (347) could not recover.
This doctrine is recognized and illustrated by the Court in the case ofLe Caux v. Eden, and Justice BULLER observes, that upon the general plea of not guilty, no action can be maintained, where the question *Page 292 
relates to prize; and for this reason: That if the taking was a trespass at common law, it would have been incumbent on the defendant to have pleaded specially; but that a capture as prize was not a trespass at common law, and therefore under the plea of not guilty the plaintiff could not recover.
The principle is confirmed by Lord Kenyon, in the case of Owen v. Hurd, 2 Term Rep., 644, who declares that even the consent of parties cannot give the Court jurisdiction where it had none before; and that the Court is bound to take notice that it had not jurisdiction.
Agreeably to these decisions was the cause of Plaice v. Campbell, determined by the Circuit Court at Raleigh: It came out in evidence that the plaintiff's right was founded upon a capture on the high seas as prize. Immediately upon this discovery the Court ordered the cause to be dismissed, and said that they were bound to notice their want of jurisdiction, and that it was not necessary in that case to plead it.
If, however, this should be deemed an insufficient answer, I have to remark that the plaintiff is precluded from taking any advantage for the want of this plea. For whether this Court has jurisdiction of this cause or not, is the very question which the jury, by their verdict, have reserved for the opinion of the Court. And the question now before the Court is not whether the defendant was bound to plead to the jurisdiction, but whether the Court in fact has jurisdiction.
Therefore, as the case now stands, it is totally immaterial whether the plea was entered or not.
Before I conclude, it will be necessary to examine one authority, upon which the plaintiff has very much relied, to prove that the Court has jurisdiction. It is the case of Beake v. Tyrrell, 1 Show., 6. And it is there stated that trespass at common law will lie for the recovery (348) of damages in taking a ship on the high seas as prize.
Did the facts in this case warrant the opinion of the Court, and justify the use of expressions in that broad and extensive manner which these expressions seem to import? Yet I might assert, and with confidence, too, that one solitary authority ought not to weigh against a series of decisions to the contrary; and these decisions made, too many years afterwards, when the learning upon maritime affairs, and the doctrine of admiralty jurisdiction, became much better defined and understood.
But there is not the least occasion to resort to such reasoning, for upon examination it will appear that this case, so far from impeaching the doctrine and undermining the ground upon which I stand, will support both, and be found in an exact line with all the authorities cited. *Page 293 
This case is also reported in 5 Mod., 194; Comb., 120. And upon a review of the whole, it appears that, by a charter granted to the East India Company, they had an exclusive right to trade to the East Indies, and that every ship found trading within the limits of the charter without a license for that purpose from the company, became liable to forfeiture.
It further appears that the plaintiff was owner of a ship, and that this ship, as an interloper, was seized by the defendant, captain of an armed vessel, for a breach of this clause of the company's charter, in trading within these limits without a license; and in consequence of such seizure was condemned as forfeited to the company, in some one of the company's courts, erected by virtue of their charter.
The plaintiff instituted an action of trespass against the defendant to recover damages for this capture, and the action was held to be maintainable in a court of common law, and clearly it was so; but the confusion arises in calling this seizure a prize, for it was nothing like a prize in any one particular.
A right to take a vessel as prize is founded upon the jus belli, and never permitted except during a state of actual war. (349)
At this period no war existed; it was the case of an English armed vessel taking an English merchant ship, during the time of a profound peace, and procuring a condemnation in the private court of the East India Company — a court not governed by the law of nations, which is binding upon all nations, but erected under the authority of a private statute, and of whose proceedings and decisions the King's courts were not bound to take the least notice. Therefore, it was incumbent upon the defendant not only to plead all these matters specially, but also to prove the truth of them, and also to show that the court in which the ship was condemned had competent jurisdiction; which he failing to do, judgment was given against him.
The particular circumstances of this case easily account for the observations of Chief Justice HOLT, who, in delivering the opinion of the Court, says: "It doth not appear how this ship came to be a prize: it doth not appear that there was any cause to seize her as such, nor shown that there was any war; it is not shown whose court of admiralty it was, nor before what Judge." Questions, that the learned Judge never would have made, had the ship been taken jure belli, and condemned in a court of competent authority.
The whole of this shows that this vessel was not taken as a prize in the sense we use the term at this day; but seized as forfeited for a breach of the charter and the revenue laws of the company. *Page 294 
It is in principle the same with the following case: During the suspension of our intercourse with France and her colonies, the President was authorized by act of Congress to grant permits to certain vessels to go under certain restrictions to the French West Indies.
Suppose, then, one of our armed ships should have met an American vessel trading between the French Colonies and the United States, without a permit — should seize and bring her in for condemnation — I ask, in what court would the proceedings be? Undoubtedly on the common law side of the Federal Court, and she would be considered not (350) as a prize, which can only be made in time of war, but as a vessel forfeited for the breach of a particular statute. And were the owner of this vessel disposed to institute a suit for this taking, the action would be cognizable in a court of common law, agreeably to the above case in Shower.
This decision is in unison with the opinion of the Court in the case ofLe Caux v. Eden, and is the very case which Lord Chief Justice Lee had in view when he stated, that for taking a ship on the high seas, trespass at common law would lie, but not when a ship is taken as prize.
Considering this as a fair explanation of the case and sanctioned by authorities, I feel no hesitation in saying, with submission to the Court, that this case, so much relied upon, will not support the ground upon which the plaintiff's counsel has built his argument. That so far from proving that the courts of common law have cognizance of the question of prize, it clearly shows that the Court entertained jurisdiction of that particular case for the express reason that the vessel was not taken as prize, but merely forfeited for a breach of the company's charter. And there is no doubt but that the courts of common law have exclusive jurisdiction of all cases of penalties and forfeiture, and every question founded upon or arising out of them.
Having now, as I conceive, fully answered the objections set up by the plaintiff, I have only to add that it seems evident that a court of common law cannot take cognizance of any cause in which is involved the question of prize or no prize, and have endeavored to show that the present case is completely of that nature, and that judgment cannot be rendered for the plaintiff here, without first deciding upon the validity of the capture, and declaring the prize to have been illegally taken, which a court of common law has no power to do.
I have also endeavored to show that the district court has full and adequate power to grant relief, and that no impediment existed which could have deprived the plaintiff of his remedy in that court.
And as the plaintiff has clearly mistaken his remedy, I pray (351) that the cause may be dismissed for want of jurisdiction in this Court to sustain it. *Page 295 
 Haywood, in reply. The great question in this cause is narrowed to a single point, viz.: Whether a court of admiralty has exclusive jurisdiction or not. All the authorities show that the instance court of admiralty has concurrent jurisdiction; and those which say they have exclusive, are referable to the prize court. The prize courts have exclusive jurisdiction, because they proceed in rem.; the prize court can never proceed unless the thing is within their power. There can be no occasion to apply to the Government for redress, when the person doing the injury comes within the jurisdiction of the court of admiralty on the instance side, and consequently, as I contend, within the jurisdiction of this Court.
Jocelyn, in conclusion. Suppose the vessel had been brought into New Bern; would Simpson, in order to recover damages, have his own vessel seized? Certainly not; he might have proceeded against the person, and the court of admiralty would have been competent to give relief. 2 Dallas, 165. The question whether prize or no prize being at rest, a libel might be exhibited for damages, by reason of the illegal capture.
If our courts of admiralty are both prize and instance courts, then this case comes completely before them, taking it in either point of view, or whether the proofs be in rem. or in personam.
In England there are two admiralty courts of civil jurisdiction; the one is called the instance court, the other the prize court. In many instances the courts of common law have jurisdiction of trespasses committed on the high seas, as for seizing, stopping, or taking a ship on the high sea not as prize. But whenever the trespass complained of is a taking, etc., on the high seas as prize, the courts of common law have not jurisdiction. The nature of the question, not the locality, constitutes the rule on which depends the jurisdiction of the courts of common law. But for the taking, etc., as prize (of which the courts of common law have not jurisdiction), the prize courts have sole and exclusive jurisdiction. Doug., 592. A trespass for taking a (352) ship, etc., not as prize, is the object of municipal law. The prize court is governed by rules and regulations peculiar to itself. In this Court, generally disputes arise not between citizens or subjects of the same, but of different nations. It is therefore proper that such disputes should be determined by the laws and usages of nations, and such regulations as may exist between the nations to which the parties belong; so that the same rules of decision are common to prize courts, whether established in one country or another. The powers of the instance courts and prize courts constitute the extent of jurisdiction of the courts of *Page 296 
admiralty in the United States. 3 Dallas, 16. It appears from the record in this case that the defendant captured the brig by virtue of a commission from the French Republic, and in consequence of the said brig's being without a register, etc., the defendant sets up no claim to the brig, nor justifies the taking of her on any other ground. Is this, then, a question of prize or no prize, or not? I think it is, and that this Court consequently has not jurisdiction, but that the court of admiralty has sole and exclusive jurisdiction in cases of this description.
It has been urged for the plaintiff that this matter ought to have been pleaded to the jurisdiction of the court, and that the not pleading it in that form is a waiver of it; but consent cannot give original jurisdiction to a court which has it not. 2 Burrow, 746; 2 Wn. Rep., 215. It was decided in the case of Row v. Hassard, cited in Doug., 581, that the plaintiff could not recover in trespass for taking a ship as prize, the plea of not guilty being pleaded. It has also been urged for the plaintiff, that unless the Court will grant him relief he will be without a remedy, because only the person of the defendant is within the reach of the courts of admiralty, and those courts will not proceed against the person in the first instance.
I think this is a case of prize or no prize, and that the courts of admiralty have exclusive jurisdiction of it. I know of no authority warranting an exception from this general rule, in the case where the person of the captor only, and not the vessel captured, is within (353) the jurisdiction of the courts of admiralty. It has likewise been urged for the plaintiff, that as the defendant converted the brig to his own use before any adjudication took place respecting her by a proper tribunal, he ought to be considered a trespasser ab initio. In order to ascertain the merits of that argument, we must have recourse to the particular usages and regulations that may exist between the countries to which the plaintiff and defendant may belong. To go in search of these would lead us out of our course; they exclusively belong to the prize courts. If it is said that the brig Sally belonged to the citizens of a neutral nation, and therefore could not be the subject of prize, it may be observed that the owner of a neutral ship may violate his neutrality by carrying contraband goods, by taking part with one of the belligerent powers improperly, etc. Whether the being without a register, etc., would justify a capture, etc., is not, I think, for this Court, but a prize court to determine. I am of opinion, therefore, that however strongly the justice of this case may plead for the plaintiff, that this Court has not jurisdiction of the subject matter for which this suit has been brought, and that judgment should be entered for the defendant. *Page 297