## McBurnie v. Sullivan.

(Decided March 7, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

False Imprisonment—Action for Damages—Power of Justice of the Peace to Punish for Contempt—Liability.—A justice of the peace, acting as a judge and within his jurisdiction, who imprisons one for either a criminal or civil contempt, is not liable in damages, even though he act maliciously or corruptly. To sustain such an action it is necessary not only to show that he acted maliciously or corruptly, but that he did not have jurisdiction.

J. W. S. CLEMENTS for appellant.

MACKEY & MACKEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, James L. McBurnie, brought this action against defendant, P. T. Sullivan, to recover damages for false imprisonment. The petition is as follows:

"The plaintiff, Jas. L. McBurnie, says that he and the defendant, P. T. Sullivan, are citizens and residents of Jefferson County; that the defendant is, and was at all times herein mentioned, a duly elected, qualified and acting justice of the peace in and for said county; that on the 17th day of July, 1912, plaintiff was present in defendant's court in the city of Louisville for the purpose of testifying in a proceeding therein pending, and while demeaning himself in a proper manner, the defendant grossly insulted plaintiff by addressing to plaintiff uncalled for, belittling and false accusations, and insinuations; that he thereupon resented defendant's unwarranted conduct and speech by answering back sharply in kind, being provoked beyond endurance by defendant as aforesaid; that thereupon the defendant maliciously, unlawfully, and wrongfully accused plaintiff of being guilty of contempt of defendant's court, and adjudged and fixed a fine of three ($3.00) dollars and imprisonment in the county jail of Jefferson County for six hours against plaintiff; that in pursuance thereof he made out and signed an order commanding the constable in attendance upon his court to forthwith arrest plaintiff and deliver him to the jailer of said county to be there held in durance vile for the said period of six hours; that in pursuance to said order said constable did so arrest and deliver plaintiff to said jailer, who, in pursuance to said order, did imprison plaintiff wrongfully and against his will in the common jail of Jefferson County for the space of thirty minutes; that he was thereby greatly injured in his name, fame and reputation, made to appear ridiculous, greatly injured, humiliated, mortified and wounded in feeling to his great loss, cost, injury and damage in the sum of five thousand ($5,000.00) dollars.

"Plaintiff says that the defendant acted in the way complained of without reason, right, just, probable or any cause, but simply from malicious personal spite toward plaintiff, and had over defendant no jurisdiction or power in law, as he well knew, to punish plaintiff for contempt, and plaintiff says that he was without fault at that time, and guilty of no contempt, as defendant knew, and that defendant caused and brought about the false imprisonment as aforesaid and the punishment aforesaid was excessive and illegally imposed.

"Wherefore, plaintiff prays judgment against the defendant for five thousand ($5,000.00) dollars, and his costs herein expended."

A demurrer was sustained to the petition and the petition dismissed. Plaintiff appeals.

In this State justices' courts are courts of record. Kentucky Statutes, section 1088. Section 142, Constitution, provides that the jurisdiction of justices of the peace shall be co-extensive with the county, and shall be equal and uniform throughout the State. Justices of the peace have jurisdiction in certain classes of cases. Kentucky Statutes, sections 1084, 1086, 1087, 1088 and 1093. The petition in this case admits that defendant was a duly elected, qualified and acting justice of the peace in and for Jefferson County. It further alleges that plaintiff was present in defendant's court in the city of Louisville for the purpose of testifying in a proceeding therein pending. In the absence of an allegation to the contrary, it will be conclusively presumed that the proceeding then pending was one of which the justice had jurisdiction, and as plaintiff was present and testified in that proceeding, it necessarily follows that defendant had jurisdiction of his person. Though seeking to justify his contemptuous conduct by an allegation to the effect that he was provoked thereto by the conduct of defendant, the petition actually admits that plaintiff was guilty of contempt of court. Blackstone lays down the following rule:

"Not only such as are guilty of an actual violence, but of threatening or reproachful words to any judge sitting in the courts, are guilty of a high misprison, and have been punished with large fines, imprisonment, and corporal punishment. And, even in the inferior courts of the King an affray or contemptuous behavior is punishable with a fine by the judges there sitting; as by the steward in a court leet, or the like." 4 Blackstone's Com., Sec. 126.

In the case of Pepper v. Mayes, &c., 81 Ky., 673, an action against a justice of the peace for false imprisonment, the court said:

"'The general rule applicable to justices of the peace, as to all judicial officers, is that where the officer has jurisdiction of the person and of the subject matter he is exempt from suit by a private individual for damages so long as he acts within his jurisdiction and in a judicial capacity. (2d vol. Hilliard on Torts, chap. 28, p. 108; Cooley on Torts, p. 409.)

"Judge Cooley, in his work on Torts, p. 408, in reference to this matter says:

"'Whenever, therefore, the State confers judicial powers upon an individual, it confers them with full immunity from private suits. In effect, the State says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the State and the peace and happiness of society; that if he shall fail in a faithful discharge of them, he shall be called to account as a criminal; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages.' This rule 'applies to the highest judge in the State or nation, but it also applies to the lowest officer who sits as a court and tries petty causes, and it applies not in respect to their judgments merely, but to all process awarded by them for carrying their judgments into effect.'

"There are dicta in several cases in this State which tend to the conclusion that an action for damages will lie against a justice of the peace for acting corruptly while acting or deciding within his jurisdiction, as in the case of Revill, &c., v. Pettit, 2 Met., 319. That was a case where one justice of the peace assumed to hold an examining court alone, and to commit to jail one charged with a felony, when the Criminal Code expressly requires that on a charge of felony two magistrates are required to hold an examining court and to admit to bail or commit to prison. That was a clear case of the usurpation of a jurisdiction not pertaining to the office of magistrate, and such a case as did not call for the expression of an opinion as to whether the justice would have been answerable in damages for corruption while acting clearly within his jurisdiction and in a judicial matter."

In the case of Dixon v. Cooper, 22 Ky. L. Rep., 539, the court said:

"The rule as to the liability of judicial officers seems to be that a judicial officer cannot be held liable in a civil suit for any act done in the performance of his judicial duties, provided he has jurisdiction of the person and the subject matter, and this, though the imprisonment complained of be the result of a mistake of law, or error of judgment, or even malice. (Opinion of Mr. Justice

Field in Randall v. Brigham, 7 Wall, 523). This court, in Ayars v. Cox, 10 Bush, 207, upon the authority of Revill, &c., v. Pettitt, 3 Met., 314, recognizes a distinction between superior and inferior judicial officers and announces: 'There are then two distinct classes of cases to which this principle of judicial protection does not apply: First, where a person having special or limited judicial authority does any act beyond the scope of his authority; and, secondly, where, although acting within the limits of his jurisdiction, he is actuated by malice or corrupt motives.' But in Pepper v. Mayes, &c., 81 Ky., 675, this court, through Judge Hines, quoted approvingly Judge Cooley's statement of the rule (Cooley on Torts, page 408), as well as his statement that it not only 'applies to the highest judge in the State or Nation, but it also applies to the lowest officer who sits as a court and tries petty causes, and it applies not in respect to their judgments merely, but to all processes awarded by them for carrying their judgments into effect.' In the same opinion the 'expression of an opinion (in the case of 3 Metcalf) as to whether the justice would have been answerable in damages for corruption while acting clearly within his jurisdiction and in a judicial matter,' is referred to as dictum merely, the facts of the case not calling for the expression of such an opinion. In the case at bar we have one which seems to come clearly within the rule laid down by Judge Hines, viz.: that of a judicial officer acting within the scope of his authority as such in a matter in which he had jurisdiction both of the person and the subject matter. (Hilliard on Torts, chapter 28; 12 A. & E. Encyl. of Law, 758, et seq.)

"The judgment is affirmed."

Plaintiff, while admitting that the rule above announced applies in a case of civil contempt, contends that justices of the peace have been given no power to punish for criminal contempts, and therefore the defendant acted without his jurisdiction. So far as the right of appeal is concerned, there is a distinction between civil and criminal contempts, but so far as the right to punish is concerned there is no distinction. Subdivision 6, relating to "Contempts," occurs in the Kentucky Statutes under the heading of "Crimes and Punishments," and embraces sections 1291 to 1302, inclusive. Section 1293 provides:

"Witnesses, jurors and officers of courts, for a contempt in disobeying the summons of court, or neglecting

to execute or due return make of a subpoena or order of court, or other judicial officer, or for any other contempt, may be fined by the court or officer sitting as such in a sum not exceeding thirty dollars."

It will be seen that the above section gives to every court the power to punish not only for the contempts therein specified, but "for any other contempt." This language is certainly broad enough to include any conduct or language on the part of a witness calculated to bring the court into contempt.

In addition to section 1293, section 1301, relating to justice and other inferior courts, provides as follows:

"No justice's, county, quarterly or police court or inquiring court shall inflict a fine of more than three dollars, or imprison more than six hours."

As the language of section 1293 applies to every court, and as the purpose of section 1301 is simply to provide a different punishment for contempts committed in a justice's court, it is perfectly manifest that a justice's court has the same power as any other court to punish for contempts, though it may not inflict the same punishment as the higher courts.

Our conclusion, then, is that a justice of the peace, acting judicially and within his jurisdiction, who commits one to prison for contempt of court, either civil or criminal, is not liable in an action for damages, even though he acts corruptly or maliciously. To sustain a civil action in such a case it must be shown not only that he acted maliciously or corruptly, but also that he did not have jurisdiction.

Judgment affirmed.