# Marcum et al. v. Commonwealth et al.

(Decided Feb. 4, 1938.)

WILLIAM RICE, County Attorney, and BERT T. COMBS for appellants.

A. T. W. MANNING for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal is prosecuted from an order of contempt and attachment issued by the Honorable Finley Hamilton, special judge of the Clay circuit court, against the county judge, members of the Clay county fiscal court, and other coappellants named in the caption hereto.

The order of contempt appealed from, it is shown by the record, grew out of a civil case filed by the appellee, R. C. Robinson, in the Clay circuit court.

By the petition filed in this action, he alleged that, as the duly appointed official reporter of the Clay circuit court, he had rendered services to it in the amount of $1,230, for which he had filed his verified claim, which had been examined, approved, and certified by the Clay circuit court to the fiscal court for payment; that the fiscal court had, upon the presentation of his claim so certified as proper and showing it one for governmental services rendered, nonetheless failed and refused to pay or allow same, but was expending the revenues of the county in the payment of claims other than for governmental purposes, held by favored individuals, and that it would continue to do so unless restrained by the proper orders of the court.

His petition concluded with the prayer that the defendants, comprising the fiscal court of Clay county, be required by mandatory orders to allow plaintiff's claim, as set out in his petition, and, further, that they be restrained from allowing and paying claims of other persons not for actual governmental expenses until plaintiff's claim should have been paid.

The regular judge of the Clay circuit court, being the father-in-law of appellee, declined to try the case and the Honorable Sanders E. Clay was duly appointed as special judge to try same.

The defendants, here appellants, filed answer to appellee's petition, denying appellee's claim and especially certain allegations thereof.

Upon the case coming on for trial before the special judge on the 14th day of the 1937 April term, the court overruled plaintiff's demurrer to the answer and, further, upon its own motion ordered the fiscal court of Clay county and its budget committee to include in its budget for 1937 the items sued on and, further, to pay said indebtedness out of the funds specifically mentioned in the budget for said purpose to the plaintiff and continued the case for further orders. To such ruling of the court, both plaintiff and defendants objected and excepted, and prayed an appeal to the court of appeals, which was granted.

Further, the order recites that the court declined to act upon the special and general demurrer filed by the defendants to plaintiff's petition, to which ruling the defendants also objected and excepted.

It appears that while an appeal was granted from this judgment of the court, no appeal has been taken or is here shown to have been prosecuted therefrom, nor was a motion made to modify or dissolve it at the following regular September term of the court. The cause having been again certified to the chief justice of this court for designation of a special judge to try same, and the Honorable Finley Hamilton having been duly so appointed to act, upon the case coming on for trial before him, the plaintiff, by counsel, produced and filed in open court his motion and supporting affidavit for a rule against the defendants, and each of them, to show cause why they, and each of them, should not be punished for contempt of court, in having failed to comply with the order of the circuit court entered at its prior April term, requiring the said defendant members of the fiscal court and budget commission of Clay county to include in its budget for the year 1937 the claim of this plaintiff sued upon herein. Plaintiff's affidavit set out that no provision had been made by such officials in said budget for the year 1937, as ordered, for the payment of plaintiff's claim sued on and that the same was not included therein, nor had any part thereof been paid him. Upon the submission to the court of the cause on said motion and affidavit of plaintiff for a rule against the defendants to show cause why they should not be punished for contempt of court in failing to comply with its said orders made and entered at its prior May term, the court, having considered the said motion and affidavit, sustained the motion and directed the clerk to issue the aforesaid rule against all of the defendants to show cause why they should not be punished as for contempt of court, in failing to comply with its said orders.

Thereupon came T. R. Marcum, Wm. Rice, Fred Whitis, and members of the fiscal court of Clay county and moved the court to set aside the judgment entered at the regular April term, 1937, in so far as it directed the Clay county budget commission to perform any act or refrain from performing any act, for the reason that

4

the aforesaid budget commission was not before the court when the cause was tried, in that no action had been filed against them in that court, or notice served on them, nor was any defense made by them thereto, and further asked that the judgment be set aside because the order issued was in the nature of a writ of mandamus; that the payment of this claim is of a discretionary nature, and therefore a writ of mandamus will not lie against an officer in compelling his performance of a discretionary act.

It may be observed that this motion entered by the defendants, pleading that they had not been made parties to nor entered a defense to this action, wherein this order of the court was made, and therefore asking that it be dismissed as one not affecting or binding them, was in itself sufficient as an entry of their appearance in the case and effective for constituting them parties defendant thereto.

Upon this cause coming on for hearing on the rule awarded to the plaintiff against the defendants to show cause and the written response thereto made by defendants, to which the plaintiff objected and demurred as insufficient, the court sustained the said objection and demurrer thereto and ruled the written response to be, insufficient. Thereupon, on motion of plaintiff that the rule against defendants be made absolute, the court so held, in adjudging the defendants in contempt of court for their failure to comply with its earlier judgment and order requiring the defendants, the fiscal court of Clay county, and its budget committee to include in its budget for the year 1937 the claim of the plaintiff sued on and for their failure to pay, as also thereby directed, the said indebtedness sued for from funds specifically mentioned in said budget for said purpose. On a further motion of counsel for plaintiff, the court extended to the defendants time to the 19th day of the term, in which to purge themselves of their continuing contempt of court, in failing to perform its judgment entered at its April term, and ruled that, upon the continued failure of the defendants, within said time, to purge themselves of this contempt, the order of the court may further include "attachment and such other process as may be necessary to enforce the orders of the court." Whereupon the case was di-

rected passed to the 20th day of the term for such further order as might be necessary and appropriate.

To this ruling and order defendants objected and excepted, and prayed an appeal to the Court of Appeals, which was granted.

The extended time adjudged given the defendants in which to purge themselves of their continuing contempt having expired without their so doing, the court thereupon further ordered that the defendants, comprising the fiscal court of the county, having been adjudged in contempt of court for their continued refusal to obey its orders, and the court, of its own motion, having granted them an extension of time in which they could purge said contempt by obeying or complying with the orders of the court, and it appearing to the satisfaction of the court that said defendants, and each of them, had failed to comply with the orders of the court or to purge themselves of the contempt adjudged against them, further adjudged that said defendants and each of them are guilty of continuing contempt of the orders of the court, and the clerk of the court is ordered and directed to immediately issue attachments for each of said named defendants and deliver them to the custody of the jailor of the county, and the jailor is ordered and directed to commit each to the county jail and to hold each of said defendants in his custody in the jail of the county until such time as said defendants shall purge themselves of the continuing contempt of this court herein adjudged against them and each of them, to all of which the defendants objected and prayed an appeal to the Court of Appeals, which was granted.

Thereupon, the defendants attempted to supersede the order of the court by executing a supersedeas bond and having order of supersedeas issue thereon. The appellee has moved to dismiss that appeal and discharge the supersedeas.

The question presented upon this record, set out with some detail, supra, is whether or not the court had authority to enforce its judicial orders. Even conceding arguendo that any of the orders or rulings of the court hereinabove shown made were either irregularly or prematurely made, it nonetheless conclusively appears that the trial court making the complained of

orders yet had jurisdiction of both the subject-matter and the parties to the action before it.

Further, it may be conceded that such being the case, the court was clothed with ample authority to enforce its judicial orders made against the parties in the trial of the case and to impose its sanction or punishment upon those acting in defiance or disobedience of its orders, as for their contempt of court.

As said in 6 R. C. L., section 2, page 480:

"The (courts') power to punish for contempt is as old as the law itself, and has been exercised from the earliest times. In England it has been exerted when the contempt consisted of scandalizing the sovereign or his ministers, the law-making power, or the courts. * * * The power to punish for contempt * * * has been almost universally preserved as far as regards the judicial department. The power which the courts have of vindicating their own authority is a necessary incident to every court of justice, whether of record or not; and the authority for issuing attachments in a proper case for contempts of court, it has been declared, stands upon the same immemorial usage as supports the whole fabric of the common law. It is as much the lex terrae and within the exception of Magna Charta, as the issuing of any other legal process whatever."

Further, section 3 of the text continues:

"Proceedings for contempts are of two classes —those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made for enforcing the rights and administering the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest as to their conduct and prosecution are the individ-

uals whose private rights and remedies they were instituted to enforce.''

Pursuing further this subject, it is said (section 28):

"The power of inflicting punishment on persons guilty of contempt of court may well be regarded as an essential element of judicial authority, necessarily conferred by a general grant thereof. Therefore, if, as in the several states of the United States, courts are created by their constitutions and judicial power is given them, this includes the power to punish for contempt. In this sense, the power of courts with reference to the subject of contempt is said to be inherent, whether they be state, federal, bankruptcy, or common law courts. It is not material what the court is called nor what branch of jurisprudence it administers.''

To like effect did this court so declare and apply this universally established rule in the case of Smith v. Miller, Judge, 122 Ky. 289, 91 S. W. 1140, 28 Ky. Law Rep. 1205, wherein it is said:

"The order of the injunction was not void. The parties were heard before it was granted. * * * The question here is not whether the court erred in granting the injunction, but whether the order has been violated. It is the prerogative of courts of equity to grant injunctions. When the court has jurisdiction, the party enjoined subjects himself to proceedings for contempt for violating the order of injunction, whether the court erroneously made the order or not. When the order is violated the same disregard is shown for the process, whether the court rightfully made the order or erroneously made it. In trying a proceeding for contempt for violating an order of injunction, the court will not inquire as to whether the order was erroneous. In contempt proceedings the only question to be determined is, has the party violated the injunction. If such were not the case, the processes of the court would be disregarded and injunctive proceedings in courts would be brought into great contempt. It is said in High on Injunctions (4th Ed.) sec. 1416, that: 'The

granting of injunctions being justly regarded as one of the highest prerogatives of courts of equity, the most exact and implicit obedience is required from those against whom the mandate of the court is directed. With whatever irregularities the proceedings may be affected, or however erroneously the court may have acted in granting the injunction in the first instance, it must be implicitly obeyed so long as it remains in existence, and the fact that it has been granted erroneously affords no justification or excuse for its violation before it has been properly dissolved. And the party against whom an injunction issues will not be allowed to violate it on the ground of want of equity in the bill, since he is not at liberty to speculate upon the intention or decision 'of the court, or upon the equity of the bill, or to question the authority of the court to grant relief upon the facts stated, except upon application to dissolve the injunction. So, if the defendant is in doubt as to the scope or extent of the injunction, he should not willfully disregard or violate it with a view of testing such questions, but should apply to the court for a modification or construction of its order. And upon proceedings for contempt in this class of cases the only legitimate inquiry is whether the court granting the injunction had jurisdiction of the parties and of the subject-matter, and whether it made the order which has been violated, and the court will not in such proceedings, consider whether the order was erroneous. So it is no defense to contempt proceedings that the bill is demurrable or that it is defective for want of prayer or process.''

See, also, as to this, Rudd v. Rudd, 184 Ky. 400, 214 S. W. 791; Melton v. Commonwealth, 160 Ky. 642, 170 S. W. 37, L. R. A. 1915B, 689; Henry v. Wilson, 249 Ky. 589, 61 S. W. (2d) 305; Reeves v. Stewart, 150 Ky. 124, 150 S. W. 26, 44 L. R. A., N. S., 185, and McBurnie v. Sullivan, 152 Ky. 686, 153 ·S. W. 945, 44 L. R. A., N. S., 186.

Mindful of these universally declared and applied principles, making it both the duty and the right of the court to protect its judicial authority and dignity against the disobedience and contempt of its orders by

litigants before it, we are led to conclude that the one question here presented must be answered as it was in the Smith Case, supra. Also it is our opinion that the order of supersedeas made is not effective to arrest the enforcement of the court's contempt order made against these appellants, whose appeal therefrom we conclude should be dismissed.

Judgment affirmed.