BEVERLY SCOTT v. S. H. FISHBLATE.

*Courts—Power to Fine for Contempt—Liability of Judicial Officer For Judicial Acts.*

1. All courts exercising Judicial powers have the inherent right to punish for contempt and, where it is for conduct in the presence of the court, the exercise of such power is final and cannot be reviewed in this or any other court.

2. A civil action for damages cannot be maintained against a mayor who, while sitting as Judge of a Mayor's Court, ordered the imprisonment of a person for contempt although the order was erroneous and made through malice.

ACTION for damages for false imprisonment before *Hoke*, *J.*, at April Term, 1895 of NEW HANOVER Superior Court.

Issues—Did defendant unlawfully cause the imprisonment of plaintiff as alleged? Ans. No. 2. What damage is plaintiff entitled to recover?

There was evidence by plaintiff tending to show that in June, 1894, he was arrested for unlawfully bury ng night-soil within the limits of the city of Wilmington and taken before defendant Mayor for trial. On affidavit the cause was removed by defendant for hearing before Clowe, J. P., who proceeded to examine the case, but on finding the justice had made the original affidavit on which the warrant had issued he declined to proceed, and thereupon plaintiff expressed his satisfaction at the decision of the Justice so rendered in the case. Defendant who was standing in the court room, under pretence that his court was in session then and there decided that plaintiff had committed a contempt in presence of his court tending to obstruct its business, and ordered the plaintiff to jail therefor and by reason of said order and in pursuance thereof plaintiff was wrongfully imprisoned for several days in the common jail suffering much damage. The mayor's court was not in session at the time. Plaintiff did not even know defendant was any where present, and the conduct of plaintiff in no way tended to obstruct the court or impair the respect due to its authority. There was evidence tending to show that defendant was the Mayor and at the time of the judgment complained of, the mayor's court with defendant presiding was regularly and properly in session engaged in transacting business of the court and while so engaged the defendant broke out in a loud and boisterous noise calculated and intended to interrupt the transaction of business and that it did interrupt such proceedings, and defendant, in exercise of his authority as Mayor, then and

SCOTT v. FISHBLATE.

there adjudged plaintiff guilty of contempt and ordered him to jail and plaintiff was imprisoned by virtue of such order for contempt committed in presence of court when same was regularly and properly in session.

Howell, witness for plaintiff: Am clerk; docket present is the docket of criminal cases tried before mayor. This was found in office when he went into office and is only one used.

Plaintiff testified in his own behalf as follows: Sometime in June, 1894, he was arrested on a false warrant for burying night-soil in city limits. Charge was false. He was taken before mayor at city hall and knowing that mayor had great prejudice against plaintiff made affidavit and asked for removal. Defendant tried one or two cases and then called plaintiff's case. Examined two or three witnesses on it and said "Alderman Clowe can try your case, sir." Got up and went away. This was the last case. Defendant went off to one side in city hall. Mr. Clowe went on to hear the case and said " Scott, I will turn your case to Esquire McGowan, I see that I made the affidavit for your arrest." He then rose and I said " I thank you sir, I thank you; I am sure I can get justice before Esquire McGowan " and bowed. Then Mr. Fishblate, (the Mayor) called out from way back where he was standing and said in an angry voice: "Clowe, send that fellow to jail for contempt." Clowe said "I can't do that, I've adjourned the court." Fishblate then came walking from where he was standing and said "If you don't, Clowe, I will. I can do it. I will send him to jail till he rots." He spoke in a very angry tone. Plaintiff begged and said to Fishblate he was sick and had fever, and not to send him to jail. Fishblate wrote out a mittimus and said "I'll try you right here myself, you can't move it anywhere." He told him he had nine children and one of them was then about to die. Plaintiff

went to jail and the child died, he got there just as he was dying, intended no contempt and did not know Fishblate was in the house when he spoke.  He, Fishblate, has had feelings against him because he was active two years ago against him for mayor and has been mad ever since, caused his arrest several times.  Plaintiff was taken off to jail on defendat's warrant for this.

Cross-examined : He has been dealt with several times and put in jail by him several times, has not been convicted before other Mayors.  Fishblate when he finished other cases said "I adjourn court and turn his case over to Alderman Clowe.  I'll put him in jail till he rots," and wrote out mittimus.  White came and turned plaintiff out several days after arrest.

Evans was introduced for plaintiff and testified he was present at Mayor's court in suit against Beverly Scott burying night-soil.  Scott having made affidavit, Fishblate turned over the case to Clowe, walked across to the water-cooler and said, "Scott didn't seem to think I could give him justice."  Clowe after hearing evidence stopped and said, "I see I issued paper and cannot try case.  I therefore turn papers over to McGowan, J. P."  Then Scott broke out in a loud and boisterous laugh and said "I am so glad."  Fishblate called out "Clowe, fine that man $50, for contempt and put him in jail 30 days for contempt of court."  Clowe replied "There is no court in session now.  I've turned the case over to McGowan."  Fishblate then resumed the chair, called court to order and said—"Scott, I'm tired of this—people swearing they can't get justice before me ; it is a city offence and I have a right to try and intend to do it."  Scott was put on stand and asked when and who told him to put night soil at certain places and was answered.  Fishblate said "I fine you $50, and imprison you 30 days for contempt of court."  Scott broke down crying, begged not

SCOTT v. FISHBLATE.

to be put in jail. This was the last case and Fishblate didn't take up this case till he resumed his chair second time. DeRosset, witness for plaintiff said—"When Clowe said he turned case over to McGowan, Scott broke out in a laugh—Fishblate called to Clowe to fine him $50 for contempt. Clowe replied to Fishblate, "I have no jurisdiction." Mayor hurriedly went back to the chair and said he would try the case himself. He did go on and hear some of the case and said, "I'll put him in jail, &c.," and plaintiff broke out in a cry that he had nine children dependent on him, &c. Mayor said he wished to put a stop to the impudence in court room, spoke in an irritated voice. The laugh of Scott was very insulting.

Defendant's evidence: Charter of city introduced. Ordinance 21 for quiet and protection of town. R. B. Clowe was introduced and said on 4th of June last was Chief of Police, term having begun March, 1893—was also clerk to Mayor on occasion when plaintiff was dealt with for contempt, case called, affidavit made, Mayor transferred case to him who was a justice, went out for his docket and got it, and put down the case and discovered he had made affidavit and said he couldn't try the case as he had made affidavit. Mayor left the court and went over to the water-cooler—had been off the bench some two minutes. He, Clowe, had intended this remark for Fishblate who was coming back, when he said he couldn't try case. Scott broke out in a loud, boisterous and insulting laugh, very insulting to court, did not transfer or otherwise dispose of case. Fishblate had case and dismissed it, fined plaintiff $50, and to be imprisoned 30 days for contempt. Character of Scott is bad. There was no regular docket while he was acting as clerk. Cross-examined. Fishblate turned case over to him—found he had made affidavit and could not proceed—did not put his hat on when he made the

announcement—went out the court-railing, and went around the railing where the water was—no other case to be tried that day—this was the last matter for the day—papers were on table and he had them in his possession. He made this remark to Mayor or intended that way "that he had no jurisdiction"; Scott may have said he was much obliged to him. Fishblate testified he was elected Mayor in 1893, had no feeling against plaintiff, was not even aware that he had opposed him politically till he said so this morning. Scott swore he could'nt get justice and he turned the case over to Clowe and started to water-cooler—had not adjourned court and was returning to Mayor's seat when Clowe said he had no jurisdiction, and the negro guffawed out in a loud laugh, and he called to Clowe as Clerk of Mayor's court to fine him $50 for contempt, he fined him as Mayor, and liberated him on pleadings of his wife, he resumed and tried the case saying he was tired of criminals removing their cases because they knew he knew their character, and being advised he had a right to try them proceeded to try and dismiss the case. He did'nt have a docket and no one had told him that was the end of the cases. Cross-examined—case was not in Clowe's hands when he stated he had no jurisdiction. Plaintiff had been very boisterous before in his court and he thought the offence deserved the punishment. He once threatened a witness's life in this court—told Clowe to put fine on him as clerk when he went over to water-cooler, and turned back and was going to Mayor's seat. Bellamy, a witness, testified that Scott's character not good in some respects, bad as a quarrelsome, boisterous man. Character of Fishblate good. Plaintiff contended in his argument. 1. Plaintiff requested the court to charge that Superior Courts and Courts superior to those were courts of general jurisdiction, and their jurisdiction

SCOTT *v.* FISHBLATE.

over any subject matter was presumed, but that courts of justices, mayor, &c., were inferior courts whose jurisdiction was not presumed, but when questioned the burden rested upon said courts to show they had jurisdiction and therefore the burden rested on defendant to satisfy jury he had jurisdiction over the subject matter as well as the person in this case, and that his court was in session when the alleged contempt was committed, and unless he did so, they must find the first issue in favor of plaintiff. Court refused this instruction. 2. The plaintiff requested court to charge that the defendant having admitted in his answer that the plaintiff was arrested upon a warrant issued by him upon a charge for burying night-soil and there being no such offence under the laws of North Carolina or the charter of the City of Wilmington, that defendant had unlawfully arrested plaintiff and was guilty of false imprisonment and jury must find first issue yes. Court declined, plaintiff excepted. 3. Plaintiff requested court to charge that it appearing from defendant's answer that he admits that plaintiff made an affidavit for the removal of his case upon the ground that he could not get justice before the defendant, and that notwithstanding the affidavit the defendant proceeded to try the charge against plaintiff instead of turning the case over to some other Justice, was an unlawful detention of plaintiff's person, a violation of law and false imprisonment and jury must find first issue yes. Declined, plaintiff excepted. 4. The plaintiff requested the court to charge that it appearing there was no record made of the facts constituting the alleged contempt, either appearing upon record or upon warrant of commitment, the law required before one could be imprisoned for contempt that the facts constituting the alleged contempt should be set forth on the record or on the warrant of commitment; that the order made by

defendant committing plaintiff to jail for alleged contempt was void and that plaintiff was imprisoned contrary to law and the jury must answer the first issue yes. Refused, plaintiff excepted. Plaintiff filed written prayer for instructions as to the first of the above positions. Court has no distinct recollection as to any written paper for the others, and the prayers themselves have been misplaced by counsel or some one in clerk's office, but all of the positions were contended for by counsel and tendered on appeal in apt time. Plaintiff filed exceptions because the same were not given in charge to the jury. Court explained nature of the action, and among other matters not excepted to charged the jury that the law clothed judicial officers, sitting as a court, with power to protect themselves by punishing for contempt committed in their presence, and this applies to all courts; and if the jury are satisfied from the weight of evidence that defendant at the time of holding court as mayor and his court being then regularly in session for business and while so engaged the defendant was then and there in the presence of the court guilty of disorderly conduct tending to obstruct the business and to impair the respect due the court, and was adjudged guilty of contempt and committed therefor and suffered imprisonment by reason of such judgment, the judgment would protect the defendant in this action and jury should answer first issue no. But if said court was not in session but had adjourned temporarily or for the day, and defendant assuming jurisdiction of plaintiff for his conduct when the court was not in session, adjudged him guilty of contempt, such acts of the mayor would be void for want of power and jurisdiction. The order would no more protect him than if he were a private individual, and in such case defendant would be responsible to plaintiff and the jury should answer the issue yes. The court

then minutely and in detail applying the evidence defined and explained to the jury under what circumstances the court would be considered in session and when adjourned, and to this portion of the charge, as to when in session and not, there was no exception. Plaintiff excepted to the failure of the court to charge as requested above and as stated by exceptions in the case on appeal and motion for new trial. Plaintiff further moved for new trial because he was forced to accept as juror one Sol. Bear who was a regular juror for the term. He had been excused in the afternoon of the day before for one day at his own request for reasons personal to himself. Plaintiff's peremptory challenges were all exhausted and sheriff was considering the call of another talisman. Court perceiving that Bear was still in court, having completed his business sooner than expected and had returned, directed sheriff to call him into the box and plaintiff challenged him for cause and no cause being shown he was empaneled as one of the jury to try the case, plaintiff alleging that he had exhausted his peremptory challenges under the impression that Bear had been excused. Motion overruled. No exception was noted or asked at the time, but in case on appeal plaintiff filed this as an exception for cause in proceedings against him. Verdict and judgment for defendant, appeal by plaintiff.

*Mr. T. W. Strange*, for plaintiff (appellant).
*Messrs. W. R. Allen* and *Ricaud & Weill*, for defendant.

FURCHES, J.: This is an action of false imprisonment. At the time of the act complained of, the defendant was mayor of the city of Wilmington and plaintiff was under arrest upon a warrant issued by defendant upon a charge of "burying night-soil" within the limits of the city. The
117—18

gravamen—the act complained of—is an order for contempt
of court, made by defendant, under which plaintiff was
imprisoned in the common jail of New Hanover county for
a number of days.

Sufficient appears in the history of this case, as contained
in the record, to satisfy us that defendant acted badly on
the occasion of making this order; and that he was lack-
ing in that respect for the position he occupied, that is
usually found in those occupying such positions, and as
should have governed his conduct on that occasion. And
it seems to us that the testimony of DeRosset and others
strongly tended to establish plaintiff's contention that
defendant's court was not in session when this order was
made; that it was made hastily and in bad temper; that
defendant resumed the chair and took control of plaintiff's
case; that he had just before made an order to remove,
for the purpose of carrying into effect an order he had no
right to make, when he did make it. And that the claim
of defendant, as a reason why he told Clowes (who seems
to occupy the convenient positions of Justice of the Peace,
Chief of the City Police and *Clerk* of the Mayor's court)
to fine plaintiff for contempt of court, was his order given
to Clowes, *as his clerk*, was an after-thought. But this
was defendant's testimony, and he introduced other testi-
mony tending to sustain his contention that his court was
in session at the time the order was made. But his case
presents for our consideration a very grave proposition of
law, in which the suffering and damage of plaintiff, and
the bad conduct of defendant must be subordinated for the
present to a discussion of the individual rights of the citi-
zen and the independence of the judiciary.

All courts exercising judicial powers have the inherent
right to punish for contempt. This power is necessary to
their existence, and where it is for conduct in the presence

of the court it is final and cannot be reviewed by this or any other court. *Bradley* v. *Fisher*, 13 Wallace, 335 ; *Pratt* v. *Gardner*, 2 Cush. (Mass.) 63 ; *Cook* v. *Bangs*, 31 Fed. Rep., 640 ; *State* v. *Mott*, 4 Jones, 449; *In re Deaton*, 105 N. C., 59. As we have said, this power exists in all courts having and exercising judicial functions—mayor's courts and justice's courts as well as higher courts having and exercising greater jurisdiction. *Cook* v. *Bangs*, and *In re Deaton, supra.* The defendant then had the right—the power—to make the order of contempt if he was sitting and his court was open for the transaction of business when he made the order. And if it was made then, it was in the exercise of a judicial power and was a judicial act—a judgment of the court; and a civil action cannot be maintained by the plaintiff against the defendant for damages, though the order complained of was erroneous, and made through malice. *Pratt* v. *Gardner*, *Cook* v. *Bangs* and *Bradley* v. *Fisher, supra.*

This seems to be a wrong without a remedy, which is said to be contrary to the spirit of our institutions. "That where there is a wrong there is a remedy". But if this is so, it is neccessarily so ; and it must be taken that the plaintiff has agreed that it shall be so.

But for the government, of which he is a part, there would be no law, nor would there be any courts to right public wrongs, none to which the citizen ( the plaintiff) could appeal to have his private rights declared and enforced. But for the law and the courts to declare and enforce the law, the plaintiff would be without remedy for any grievance, and the law of course might prevail. To have this legal protection, it is necessary to have courts—judges, justices of the peace, including the courts of mayors of towns and cities. And it is the experience and wisdom of our country that these courts cannot exist, or at least

cannot discharge their judicial functions, unless they are made free from pecuniary liability for their judgments while so acting. This does not protect them from impeach-ment nor from indictment for misconduct, fraud, or cor-ruption in office, because these are public wrongs commit-ted against the government whose servants they are.

This brings us to the real issue in this case, and that is, whether the defendant's court was open for the transaction of business when he made the order imprisoning the plain-tiff for 30 days for laughing in his court. And the jury has settled this question, if there are no errors in the rulings and instructions of the court.

There are no exceptions to evidence, and there is no exception to the charge of the court upon the question as to whether the defendant's court was in session or not, when the order committing plaintiff for contempt was made. It is expressly stated that there was no exception to this part of the charge. Nor do we find any exception to the charge of the court, "except that the court did not give the prayers asked by plaintiff." We have examined these prayers with care, and can see no error in the refusal of the court to give them to the jury. The first is princi-pally as to whether the "burying night-soil" was an offence under the ordinances of the city of Wilmington or not, and whether the defendant would not be liable for issuing the original warrant of arrest. If this had been the gravamen declared on in the complaint, it would have presented a very interesting question. *Cook* v. *Bangs, supra.* But it is not, and we do not feel called upon to discuss this ques-tion. The gravamen, as we have before stated, is the order for contempt. The only part of this prayer applicable to the case in hand is the closing paragraph, and this was given in substance, accompanied with the statement that there was no exception to this part of the charge. The

other prayers, if asked, and we are treating them as if asked in writing, are subject to the same reasons given for not giving the first, and we find no error in the court's refusing them.

There is another exception as to the juror, Solomon Bear. And we can very well see from the conflicting evidence as to whether defendant's court was in session or not, and the surroundings, why the plaintiff should not want Bear on the jury. But we are unable to see any legal error in the court made in calling him into the jury box. It seems to be one of the many incidents which takes place in the progress of a trial, by which a party is prejudiced, and for which the only relief is in the discretion of the Judge. This was asked and refused, and there can be no review of his ruling, in this court. After a careful investigation of the case we find no error entitling the plaintiff to a new trial. The judgment of the court below is affirmed.

Affirmed.