UNITED STATES v. CHAPLIN et al.

(two cases).

Criminal Nos. 16616, 16618 O'C.

District Court, S. D. California,
Central Division.

April 14, 1944.

Charles H. Carr, U.S. Atty., of Los Angeles, Cal., for plaintiff.

Hazard & Reina, of Beverly Hills, Cal., and J. E. Simpson, of Los Angeles, Cal., for defendant Charles H. Griffin.

J. F. T. O'CONNOR, District Judge.

An indictment was returned and filed on February 10, 1944, action number 16,616, against the defendants named, alleging a violation of section 88, Title 18 U.S.C.A. (the conspiracy statute). An indictment was returned and filed on February 10, 1944, in action number 16,618 against the defendants named, alleging a violation of section 52, Title 18 U.S.C.A. (depriving citizens of civil rights under color of state laws).

The defendant, Charles H. Griffin, interposed a plea in bar to each indictment.

A plea, to be good as a bar to the whole indictment, must meet the whole case, and if it does not, it will be held bad upon demurrer. Moore v. State of Mississippi, 21 Wall. 636, 88 U.S. 636, 22 L.Ed. 653.

A plea in bar to indictment raises an issue and affords prosecution an opportunity to meet it. Capone v. Aderhold, 5 Cir., 65 F.2d 130.

On determination of sufficiency of defendant's plea in bar, indictment was to be considered part of the record. United States v. Noble, D.C., 19 F.Supp. 527.

Judge James, in United States v. Schouwiler, D.C., 19 F.2d 387, held plea in bar following Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 535, 71 L.Ed. 793. In that case the court said:

"The issue whether the ship was seized within the prescribed limit did not affect the question of the defendants' guilt or innocence. It only affected the right of the court to hold their persons for trial. It was necessarily preliminary to that trial. The proper way of raising the issue of fact of the place of seizure was by a plea to the jurisdiction".

Also, United States v. Ferris, D.C., 19 F.2d 925, is authority for this contention. United States v. Mason, 213 U.S. 115, 29 S.Ct. 480, 53 L.Ed. 725.

The subject, "Special Pleas in Bar", is discussed fully in 22 Corpus Juris Secundum, Criminal Law, page 682, § 436, a, b. For a more recent discussion of pleas in bar, see opinion by Mr. Justice Reed in Edwards v. United States, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957.

This court takes judicial notice of the statutes and judicial decisions of the State of California. Pennington v. Gibson, 16 How. 65, 57 U.S. 65, 14 L.Ed. 847; Factor v. Laubenheimer, 289 U.S. 713, 53 S.Ct. 523, 77 L.Ed. 1467, affirmed 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315; Flanigan v. Security-First National Bank of Los Angeles, D.C., 41 F.Supp. 77.

The city court of Beverly Hills was established under the Municipal Corporation Act. Deerings General Laws, Act 5233, §§ 882 to 884. Under the Act the judge of the city court of Beverly Hills is appointed by the City Council under the provisions of sec. 851 et seq., and holds office "during the pleasure of said city council".

The indictments allege:

"that prior to and on December 30, 1942 and at all times mentioned herein, Charles H. Griffin was the duly appointed judge of the city court of Beverly Hills and was acting in that capacity under and pursuant to the laws of the State of California and ordinances and regulations of the municipality of Beverly Hills, California, creating the office of judge of the city court and prescribing the duties thereof."

Judge Griffin, in urging upon this court his plea in bar, contends that he is immune from indictment and prosecution for judicial acts performed by him in judicial proceedings pending in his court and within the jurisdiction thereof, and that for such acts and conduct he is amenable only to the people of the City of Beverly Hills, California and the duly constituted officials thereof, and that for any alleged misconduct in office, judges of such courts are subject only to removal from office, as prescribed by the laws of the State of California, and he then sets forth in detail the record of proceedings in his court in connection with the sentence imposed upon Joan Berry.

The statutes of California vest in the city court of the City of Beverly Hills jurisdiction over certain crimes and misdemeanors committed within the territorial limits of said City of Beverly Hills, California, and offenses under and against the laws of the State of California, and said jurisdiction includes the offense of vagrancy defined and punished by sec. 647 of the Penal Code of the state.

Judge Griffin offered to prove that: On January 2, 1943, a complaint was sworn to before him as judge by C. C. Garrison, charging one Joan Berry with the crime of violating sec. 647, subdivision 3, of the California Penal Code, to-wit, the crime of vagrancy, alleged to have been committed by said Joan Berry in Beverly Hills, California, on January 1, 1943, and attaching a correct copy of the complaint to his plea; also that on January 2, 1943, Joan Berry was arraigned in the said city court upon said criminal complaint, Judge Griffin presiding; that Joan Berry was personally present and that she was informed of the charge against her contained in said complaint; that she was advised of her legal rights as follows:

"The court advises you that you have a right to a speedy and public trial and hearing. You are entitled to process of the court to compel attendance of witnesses on your behalf and to be confronted by witnesses against you. You are entitled to the aid of counsel at all stages of the proceedings. You are entitled to be admitted to bail."

That said Joan Berry pleaded guilty; that she was sentenced to serve 90 days in the Los Angeles County Jail; execution was suspended and she was placed on probation; that as a condition of probation she was to keep out of the City of Beverly Hills, California, and to pay certain hotel bills owing by her; that the said Judge Griffin offered a true and correct copy of the city court proceedings held on January 2, 1943 and attached the same to his plea; that thereafter a nunc pro tunc order was made and entered by said court correcting the Minutes of January 2, 1943, to fix the probation period as one year; that thereafter the said city court found Joan Berry guilty of violating the probation granted to her and she was required to serve 30 days in the county jail, suspending 60 days. That thereafter on May 12, 1943, the court further modified the sentence by suspending the execution of 85 instead of 60 days and ordered said Joan Berry released from jail and permitted Joan Berry to come to Beverly Hills for the purpose of consulting her attorney; that thereafter on June 11, 1943, Joan Berry was permitted to withdraw her plea of

guilty and enter a plea of not guilty and the action was dismissed.

The remainder of the plea is a denial of the charges made against him in the indictments.

This brings us to the question of the immunity of a judge acting in his judicial capacity and within his jurisdiction in imposing sentence and probation upon a person charged with an offense in his court to which the defendant has pleaded guilty.

The attention of this court has not been called to any decision directly in point, and the court has not found such a decision.

In action No. 16,618, the indictment of the Grand Jury was found under sec. 52, Title 18 U.S.C.A., which provides as follows:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, wilfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000, or imprisoned not more than one year, or both. (R.S. § 5510; Mar. 4, 1909, c. 321, § 20, 35 Stat. 1092.)"

This statute is known as the Act of May 31, 1870, c. 116, 16 Stat. 144, which was repealed by sec. 341 of the Act of March 4, 1909, c. 321, 35 Stat. 1153. The only change in substance in the amended law above was the insertion of the words, "or District" after the word, "Territory".

It is worthy of note that in nearly three-quarters of a century no similar action has been passed upon by a court of record. The court is assisted in its decision by the decisions of our courts where judges have been sued by disappointed litigants in their courts. A long line of decisions over a period of years which marks the span of our national existence, has held the judges immune in such instances.

As far back as the case of Fray v. Blackburn, 3 Best & S. 576, 122 Eng. Reprint, 217, "a judge of the Court of Queen's Bench was sued for a judicial act, and on a demurrer the point was taken that there was no allegation of malice.

The plaintiff thereupon moved to amend by introducing an allegation of malice and corruption. The application to amend was denied, and, in denying it, the court said: 'It is a principle of our law that no action will lie against a judge of one of our superior courts for a judicial act though it be alleged to have been done maliciously and corruptly; therefore the proposed allegation would not make the declaration good. The public are deeply interested in this rule, which indeed exists for their benefit, and was established in order to secure the independence of the judges, and prevent their being harassed by vexatious actions.' "

This principle is firmly established by many English authorities. Mostyn v. Fabrigas, Cowp. pt. 1, p. 161, 98 Eng. Reprint, 1021; Lowther v. Radnor, 8 East, 113, 103 English Reprint, 287; Holroyd v. Breare, 2 Barn. & Ald. 773, 106 Eng. Reprint, 439; Fawcett v. Fowlis, 7 Barn. & C. 394, 108 Eng. Reprint, 770; Mills v. Collett, 6 Bing. 85, 130 Eng. Reprint, 1212.

From the beginning of our judicial history, a long line of authorities sustains this principle of immunity so firmly grounded in English jurisprudence. In Ross v. Rittenhouse, 1792, 2 Dall. 160, 1 L.Ed. 331, it was held that no action would lie against a judge for an act done in his judicial capacity. In Commonwealth v. Addison, 1801, 4 Dall. 225, 1 L.Ed. 810, the Attorney General made a motion for a rule to show cause why an information should not be granted against Judge Addison, as president of the court, for wilfully preventing Judge Lucas, an associate judge, of the court of common pleas, from delivering his sentiments to the grand jury. The opinion is brief and is quoted in full:

"By the Court.—We are unanimously of opinion, that the case does not present to our consideration an indictable offense; and, of course, it is not a case, in which an information ought to be granted. But we are (with the same unanimity) of opinion, that every judge has a right, and, emphatically, that it is his duty, to deliver his sentiments upon every subject that occurs in court. We add, so far as the expression of our sense of decorum may have weight, that we think, it would be indecent and improper, in any presiding judge to attempt to prevent his associates from the exercise of this right; from the performance of this duty. Motion refused."

This opinion, delivered 143 years ago, is one of the earliest holding a judge exempt from wilful misconduct and denying the right on the part of the Commonwealth to file a criminal information.

The leading case in this country is Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646. The opinion in this case has been relied upon in practically all subsequent cases dealing with the immunity of judges from actions for damages growing out of the performance of their judicial duties. See Yaselli v. Goff, 2 Cir., 12 F.2d 396, 400, 56 A.L.R. 1239 at page 1245.

"The action was brought by the plaintiff to recover damages from the defendant, who was presiding judge of the Supreme Court of the District of Columbia, and he had entered an order depriving Bradley of his right to practice as an attorney in that court. In his complaint Bradley complained that the action taken was 'willful, malicious, oppressive, and tyrannical'. The order was entered at the close of a trial of John H. Surratt for the murder of President Lincoln, when the jury, having failed to agree on a verdict, was discharged. Bradley was one of the counsel who defended Surratt, and on the discharge of the jury the judge had immediately entered the order depriving Bradley of his right to practice in that court. This order was entered because Bradley on one of the earlier days had threatened the judge, as he was descending from the bench, with personal chastisement because of alleged insults from the bench in the course of the trial. The court below dismissed the action, and the Supreme Court affirmed the court below in the opinion written by Justice Field. In the course of his opinion he said: 'In other words, it (the plea) sets up that the order for the entry of which the suit is brought, was a judicial act, done by the defendant as the presiding justice of a court of general criminal jurisdiction. If such were the character of the act, and the jurisdiction of the court, the defendant cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility.

" 'The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, "a deep root in the common law" '.

"He went on to comment upon Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285, which decided a like question, and in which he wrote the opinion of the court, and stated the nonliability of judicial officers for acts done in the performance of their judicial duties, even when the acts were in excess of their jurisdiction, 'unless, perhaps, when the acts in excess of jurisdiction are done maliciously or corruptly'. In his opinion in Bradley v. Fisher he explained how he happened in Randall v. Brigham to use the qualifying words, and that they were not intended 'as an expression of opinion that in the cases supposed such liability would exist.' And he added: 'In the present case we have looked into the authorities, and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter.' "

An exhaustive treatise on this subject is found in Yaselli v. Goff, 2 Cir., 12 F.2d 396, 399, 56 A.L.R. 1239. The opinion is by Circuit Judge Rogers, former dean of the Yale Law School. An action for mali-

cious prosecution was instituted against a Special Assistant to the Attorney General of the United States. The court held that at the times stated in the complaint the defendant was in the performance of duties imposed upon him by law, and was immune from civil action for malicious prosecution based on an indictment and prosecution although the action resulted in a verdict of not guilty by a jury. Judge Rogers said:

"There are weighty reasons why judicial officers should be shielded in the proper discharge of their official duties from harassing litigation at the suit of those who think themselves wronged by their decisions and that injustice has been done. A defeated party to a litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat. He may think that the judge has allowed passion or prejudice to control his decision. To allow a judge to be sued in a civil action on a complaint charging the judge's acts were the result of partiality, or malice, or corruption, would deprive the judges of the protection which is regarded as essential to judicial independence. It is not in the public interests that such a suit should be maintained; and it is a fundamental principle of English and American jurisdiction that such an action cannot be maintained."

The court then reviews the early English cases and cites with approval Bradley v. Fisher, supra; and quotes Chief Baron Kelly in Fray v. Blackburn, 3 Best & S. 576, 122 Eng. Reprint, 217 (Scott v. Stansfield, L. R. 3 Exch. 220, 15 Eng.Rul.Cas. 42) as follows:

"It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. How could a judge so exercise his office, if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not relevant to the case before him?"

Judge Rogers then states the general rule as follows:

"And the general rule is that a justice of the peace, acting within his jurisdiction, is not civilly liable, even though he acts corruptly or maliciously. In Cooke v. Bangs, [C. C.], 31 F. 640, which was decided in 1887, the question came before the Circuit Court for the District of Minnesota, and the opinion was written by Mr. Justice Brewer, of the Supreme Court, sitting as a Circuit Justice. It was decided in that case that where a justice of the peace, having power to commit for contempt, commits a person for contempt, and on such person being liberated on habeas corpus recommitted him on a fresh warrant for the same offense, the justice was not amenable to a civil action for false and malicious imprisonment, although his action in making the second commitment was erroneous, and although it was alleged that he acted maliciously. In the course of his interesting opinion Justice Brewer said: 'In the first place, there is no officer with respect to whose integrity and character the people in this country are more particular than they are in respect to that of a judge. The people insist upon purity of life and integrity of character in the incumbent of that office, and they are as jealous of that as of any other right. A man may vote for a person for some office about whose integrity of life he may have doubt, but he is very loth to place a man in any judicial position as to whose integrity of character he has even a suspicion. Not only that, but the moment that one holding a judicial office is suspected of corruption, or of being actuated by malice, he becomes very rapidly socially ostracised. Whenever the suspicion attaches, it is as ruinous to him as when a suspicion of want of chastity attaches to a woman. Again, he is just as amenable to the criminal law as any private citizen. There is no judge, from the judge of the Supreme Court of the United States at Washington, to a justice of the peace in the smallest township of the state, who, acting on any judicial matter from corruption or from malice, but becomes amenable to the criminal law the same as any other man, and may also be removed from office by proper proceedings. So there is no danger of judges as a class feeling that they are above the law, or becoming independent of the law, or indifferent to the rights of others. This rule, which is

founded on experience, is upheld with uniformity by the authorities so far as superior courts are concerned. There is scarcely a dissenting voice in all the long story that has been told in the history of the common law. With respect to all judicial officers—justices of the peace, as well as judges of the higher courts—the settled law of the Supreme Court of the United States, and I think the plain intimation of the Supreme Court of this state, is that, where they act within their jurisdiction, they are not amenable—to any civil action for damages. No matter what their motives may be, they cannot be inquired into.'"

The court extends immunity not only to judges, but to prosecuting attorneys in all of their official acts and even to attorneys. The court said:

"And the immunity which is extended to the judges is in like manner extended to the attorneys in the presentation of the client's case to the court or the jury. * * *

"Not only are the judges exempt, but grand jurors are in like manner exempt from actions for malicious prosecutions. In 17 Eng. & Am. Encyc. of Law, p. 1302, the law is stated as follows: 'However recklessly and maliciously a grand jury may have acted in returning an indictment against another without evidence or probable cause, the jurors are not liable to an injured person in an action for malicious prosecution.' * * *

"Not only are grand jurors exempt, but it is held that a petit juror is not liable for any statements made by him during the deliberations of the jury after it has retired to consider a verdict, and that his privilege in this respect is not limited to the words which are shown to be pertinent to the questions arising for decision. See 36 Cyc. 1255."

Further on in the opinion the distinguished jurist says:

"It has been said that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which has produced it. * * *

"A United States attorney, if not a judicial officer, is at least a quasi judicial officer, of the government. He exercises important judicial functions, and is engaged in the enforcement of the law. The reasons for granting immunity to judges, jurors, attorneys, and executive officers of the government apply to a public prosecutor in the performance of the duties which rest upon him. To hold that an attorney of a private client is clothed with absolute privilege, and that a public prosecutor, whose duty it is to enforce the laws of the United States, is not exempt because of what he says and does in the discharge of the duties of his office, is so unreasonable, so contrary to sound public policy, and to the fundamental principles of our jurisprudence, that we cannot accept it."

In the opinion in the case of Watts v. Gerking, 111 Or. 641, 222 P. 318, 228 P. 135, 34 A.L.R. 1489, decided in 1924, the court held the district attorney not liable in a civil action for damages. This case is interesting because the Supreme Court of Oregon first decided that the district attorney was liable and then recalled its decision and extended immunity from civil suits to the district attorney.

The opinion in Yaselli v. Goff, supra, was affirmed by the Supreme Court of the United States, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395.

In Landseidel v. Culeman, 47 N.D. 275, 181 N.W. 593, 594, 13 A.L.R. 1339, at page 1342, the plaintiff was arrested by a deputy sheriff under a warrant issued by a justice of the peace. The warrant purports to have been issued pursuant to a complaint by a creditor of the plaintiff charging the defendant used a fraudulent and false device to cheat the complainant. Plaintiff was taken before the justice of the peace and was later remitted to the custody of the officer who locked him up. The court held a justice of the peace in the exercise of his judicial function is immune from personal liability for the correctness of his decisions and acts to the same extent as judges of courts of general jurisdiction, though it might appear that he had acted maliciously and without a belief that the person had committed a criminal offense.

Judge Birdzell, eminent jurist of that distinguished court, speaking for a unanimous court said:

"It is elementary that judicial officers are not liable for the erroneous exercise of the judicial powers vested in them. This immunity from liability is based upon considerations of public policy. To hold judicial officers personally liable for errors of judgment concerning either questions of law

or fact would be subversive of both independence and efficiency in the administration of justice. This rule of public policy applies as well to inferior courts of limited jurisdiction as to superior courts of general jurisdiction. We can see no reason for the distinction that has sometimes been drawn between the two classes of judicial officers in this respect. On this subject, Ruling Case Law says (11 R.C.L. 815): 'In the later cases a clear tendency has been evident to abolish altogether the discrimination between judges of different rank, and to extend to justices of the peace and other lesser judicial officers immunity from personal responsibility for the correctness of their decisions and acts to the same extent that it is granted to judges of the superior courts.' If a judge acts within his jurisdiction it has been held that he is not even liable civilly though he act both maliciously and corruptly. Broom v. Douglass, 175 Ala. 268, 57 So. 860, 44 L.R.A.,N.S., 164, and note, Ann.Cas. 1914C, 1155." McBurnie v. Sullivan, 1914, 152 Ky. 686, 153 S.W. 945, 44 L.R.A.,N.S., 186.

A justice of the peace is not liable although he acted corruptly and maliciously. Also, see Scott v. Fishblate, 117 N.C. 265, 23 S.E. 436, 30 L.R.A. 696. Curnow v. Kessler, 1896, 110 Mich. 10, 67 N.W. 982.

If an officer be corrupt the public has its remedy. A very recent case is Ravenscroft v. Casey, 2 Cir., 139 F.2d, page 776, 778. The plaintiff brought her action for malicious prosecution against defendants, public officials of the village of Mamaroneck. Plaintiff discovered in the public records a cancelled check purporting to bear her signature which was a forgery. She attempted to remove the check from the public records. The Comptroller of the town, when she attempted to leave, "pushed her into a small room." The town Supervisor barred the doorway with outstretched arms. The town Attorney arrived and sent for a patrolman. The patrolman arrested plaintiff without a warrant or other legal process and the four officials "compelled her to accompany them to the village police station. She surrendered the check to the desk officer and was compelled to submit to booking and eventually to being locked in a cell with no chance to obtain counsel or inform her family of her predicament." The Comptroller swore to an information before the defendant, charging her with the crime of injury to a public record. The following morning at the village police court, she appeared before police justice Hughes, who insisted upon her pleading without opportunity to obtain counsel. She was bound over to the grand jury without bail and remanded to the county sheriff. She was kept in restraint by the sheriff, the warden and Koch and Bassett, who were apparently deputies. The police justice wrote the district attorney, insinuating against the mental status of plaintiff. The county judge without notice to the plaintiff, ordered her removed from the county jail to the psychopathic ward of the hospital; she was confined thirty days in the hospital, declared of sound mind, and taken back to the jail, and was released after the grand jury refused an indictment.

Judge Swan, after pointing out that the acts of the plaintiff were an offense against the laws of the state of New York, said:

"Nor is the complaint bettered by allegations that Lucino 'swore falsely' in charging the plaintiff with a crime, since the complaint itself pleads facts which show the presence of probable cause, regardless of the ultimate disposition of the charge. See Rubin v. Houbigant, Inc., 268 N.Y. 552, 198 N.E. 400.

"No cause of action is stated against the defendants Casey, Toucher, Koch and Bassett. They are protected by the fact that they were carrying out orders of County Judge Bailey. Whether his orders were correct or erroneous he had jurisdiction to make them and they provide immunity to the jail authorities who did nothing other than perform them. Marks v. Townsend, 97 N.Y. 590, 601; Land Finance Corp. v. Jacoby, 151 Misc. 159, 160, 272 N.Y.S. 318.

"Police Justice Hughes and County Judge Bailey are protected from civil liability since each acted as a judicial officer in a matter within his jurisdiction as such. Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239, affirmed 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395; Ingo v. Koch, 2 Cir., 127 F.2d 667, 678; Lange v. Benedict, 73 N.Y. 12, 29 Am.Rep. 80. The same principle gives immunity to defendant Ferris, the district attorney. It was his duty before presenting to the grand jury the criminal charge against the plaintiff to satisfy doubts which had been raised as to her mental condition and to present the matter to a judge of a court of record. N.Y. Penal Law, § 1120; N.Y. Code Cr.Pr. § 870 as in effect in February 1939.

Under § 870 Judge Bailey had jurisdiction to make the order for transfer of the plaintiff to Grasslands Hospital for observation. Consequently the complaint alleged no claim upon which relief could be granted against any of the defendants, and it was rightly dismissed. Judgment affirmed without costs." Augustus N. Hand and Chase, Circuit Judges, were in accord with the opinion.

In Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, on page 137, 118 A.L.R. 1440; Id., 70 App.D.C. 238, 105 F.2d 761, the court discussed the question of immunity at some length and said:

"It may be argued persuasively that all public officers should be required to answer a declaration such as that of appellant and respond on the merits. But the courts have been unwilling to go so far. The situation is one in which a serious conflict arises between considerations of public policy: One, the protection of the individual citizen against oppressive official action, and the other, the protection of the whole people by protecting their officers against vindictive and retaliatory damage suits, in order to insure their fearless and effective administration of the law. Randall v. Brigham, 7 Wall. 523, 536 et seq., 19 L.Ed. 285."

In Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676, an indictment was returned against the judge for excluding citizens of the African race in selecting jurors. The Supreme Court held that the duties imposed upon the judge were ministerial and not judicial duties and therefore the fact that he was a judge was immaterial because no immunity would attach for non-judicial acts.

In the Peonage cases, D.C., 123 F. 671, the court gave instructions to the grand jury. This was not a judicial determination of an issue before the court.

In Snowden v. Edward J. Hughes et al., 64 S.Ct. 397, this was an action against members of the State Primary Canvassing Board. The ruling of the District Court held that the alleged cause of action was predicated solely upon a claim that state officers had failed to perform duties imposed upon them by state law. Their failure was not state action to which the prohibitions of the Fourteenth Amendment are alone directed, and hence not sufficient to establish an infringement of rights secured to petitioner by the Fourteenth Amendment. The ruling was approved by the 7th Circuit, 132 F.2d 476, and the decision was affirmed by the Supreme Court of the United States. Judicial actions were not involved in this case and not discussed.

Craig v. United States, 9 Cir., 81 F.2d 816, and United States v. Manton, 2 Cir., 107 F.2d 834, do not discuss the point at issue before this court. Both cases were prosecutions for conspiracy to violate 18 U.S.C.A. § 241. Judicial immunity was not even considered in the Manton case, and there was no contention that Craig was acting in a judicial capacity. However, both cases clearly demonstrate that where a judge violates a criminal statute, he is held to the same responsibility as any citizen.

It is not necessary to point out the various provisions of the California Constitution nor the Statutes wherein judges may be tried for misdemeanor in office or for wilful or corrupt conduct in office. Suffice it to refer to the California Constitution, Art. IV, sec. 18, California Penal Code, secs. 758 to 771. People v. Ward, 85 Cal. 585, 24 P. 785; Baird v. Justice's Court, 11 Cal.App. 439, 105 P. 259.

Judge Griffin was an appointive official, appointed by the City Council of Beverly Hills, and as such he holds his office at the pleasure of the appointing power and is subject to removal at the pleasure of the Council. 21 Cal.Jur. p. 980, sec. 146. Decker v. Board of Health Commissioners, 6 Cal.App.2d 334, 44 P.2d 636; Scully v. State, 20 Cal.2d 178, 124 P.2d 609; People v. Thompson, 55 Cal. App.2d 147, 130 P.2d 237.

Specific statutes in California provide for punishment for judicial misconduct such as accepting a bribe, extortion, and "[the judge] forfeits his office and is forever disqualified from holding any office in this state." Cal.Pen.Code § 98. The indictment in this case does not charge the defendant, Charles H. Griffin, with maliciously or corruptly doing any of the acts charged.

The immunity which has clothed judges for a century and a half in our country found its genesis in the English common law simultaneously with the independence of the judiciary. The disappointed litigant cannot embarrass the judge in a civil action for damages irrespective of the justice of his decision, nor can a defendant upon whom sentence has been pro-

nounced, recover damages against the judge for the real or supposed wrong. A decision in favor of the Government in the instant criminal actions would place the official action of every justice of the peace, municipal or city court judges, Superior Court judges, Appellate Court judges and Supreme Court judges in our country at the mercy of a United States Attorney. Every sentence imposed on a defendant would be subject to review by the representative of the Department of Justice, and if, in the judgment of the Attorney General of the United States or the United States Attorney for the District, the decision deprived the defendant of his civil rights, the judge could be indicted, tried, and, if convicted, punished. Every defendant sentenced to the county jail or the penitentiary is deprived of his civil rights, and in many instances the civil rights are not revived upon release. The same reasoning would apply to our Federal Courts. To sustain the Government's contention would be to destroy the independence of the judiciary and mark the beginning of the end of an independent and fearless judiciary. No doubt unjust decisions have been rendered and individuals have suffered damage, and others have been unjustly imprisoned, while a few innocent men have suffered the death penalty as the result of a jury's verdict. No judicial system yet devised by man is perfect. The rich tradition, the long line of decisions, the confidence of our people in the state and federal judiciary, the experience of over a century and a half expressed in our legal lore, co-extensive with our national existence, cannot be ignored in deciding this issue. The house should not be burned to destroy the mouse. To sustain the Government's contention would invite similar actions against grand and petit jurors, prosecuting attorneys and attorneys representing clients before our courts and juries, now immune. Yaselli v. Goff, supra; Lund v. Hennessey, 67 Ill.App. 233; 13 A.L.R. 1349; Hunter v. Mathis, 40 Ind. 356; Sidener v. Russell, 34 Ill.App. 446; Turpen v. Booth, 56 Cal. 65, 38 Am.Rep. 48; C. J. Morrison in Turpen v. Booth, holding a grand juror not responsible in a civil suit for his action on the grand jury; however erroneous it may be and however malicious the motion which produced it, said:

"They have certain duties to perform under the law of a quasi-judicial character, and in the performance of such duties the law invests them with judgment and discretion. The grand jury was an essential part of the machinery of the County Court. They were not volunteers, but were engaged in the performance of a duty that was compulsory. In finding the indictment complained of, they acted within the legitimate sphere of their duty, and cannot be held civilly responsible. What is said by the learned judge in the case of Scott v. Stansfield, Law R. 3 Ex. 220—'this provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences'—is applicable to this case.

"To hold grand jurors liable for damages in civil actions would be against the policy of the law, and we find no authority in the adjudged cases for so holding."

Few persons would accept these positions if their official acts were subject to such liability. If judges are protected against civil actions for judicial acts, the reasons are more weighty that they should be protected against criminal actions.

Supreme Court Justice Johnson in Anderson v. Dunn, 6 Wheat. 204, 19 U.S. 204, at page 226, 5 L.Ed. 242, said:

"But if there is one maxim which necessarily rides over all others, in the practical application of government, it is, that the public functionaries must be left at liberty to exercise the powers which the people have intrusted to them. The interests and dignity of those who created them, require the execution of the powers indispensable to the attainment of the ends of their creation. Nor is a casual conflict with the rights of particular individuals any reason to be urged against the exercise of such powers. The wretch beneath the gallows may repine at the fate which awaits him, and yet it is no less certain, that the laws under which he suffers were made for his security. The unreasonable murmurs of individuals against the restraints of society have a direct tendency to produce that worst of all despotisms, which makes every individual the tyrant over his neighbor's rights. That 'the safety of the people is the supreme law,' not only comports with, but is indispensable to, the exercise of those powers in their public functionaries without which that safety cannot be guarded."

It is the judgment of this court that the plea in bar interposed by the defendant, Charles J. Griffin, is good and it is hereby sustained.

Judgment will be entered accordingly.