Roth, Circuit Judge,
concurring:
I join this Court’s judgment reversing the criminal contempt conviction against Judge Kendall. I write separately, however, to express my view that the contempt conviction should be reversed on the grounds of absolute judicial immunity.,[1] It is well-established that absolute judicial immunity protects judges from civil suit for judicial actions within their jurisdiction. See, e.g., Mireles v. Waco, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); Stump v. Sparkman, 435 U.S. 349, 357-62, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). I believe that, absent corruption or bribery, such protection should also reach criminal liability for judicial actions within the judge’s jurisdiction.[2]
*748 “As early as 1872, the [Supreme] Court recognized that it was ‘a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehensions of personal consequences to himself.’ ” Stump, 435 U.S. at 355 (quoting Bradley v. Fisher, 80 U.S. 335, 347, 20 L. Ed. 646 (1871)). Rooted in English common law, the doctrine of judicial immunity is aimed primarily at preserving judicial independence. See Forrester v. White, 484 U.S. 219, 225, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988) (citing Bradley, 80 U.S. at 348) (noting that judicial immunity historically was also a device for discouraging collateral attacks and protecting the finality of judgments); Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) (“This immunity ... ‘is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequences.’ ”) (quoting Scott v. Stansfield, L.R. 3, Ex. 220, 223 (1868), quoted in Bradley, 80 U.S. at 349); United States v. Chaplin, 54 F. Supp. 926, 933 (S.D. Cal. 1944) (“The immunity which has clothed judges for a century and a half in our country found its genesis in the English common law simultaneously with the independence of the judiciary.”).
In the civil context, “[a] long line of th[e] Court’s precedents acknowledge that, generally, a judge is immune from a suit for money damages.” Mireles, 502 U.S. at 9. There are only two circumstances in which the doctrine of judicial immunity does not apply to civil suits for money damages: (1) “a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge’s judicial capacity” and (2) “a judge is not immune for action, though judicial in nature, taken in the complete absence of all jurisdiction.” Id. at 11.
While the application of absolute judicial immunity in civil proceedings is well-established, the Supreme Court has noted in dicta that it has not recognized absolute judicial immunity from criminal liability. *749 See Mireles, 502 U.S. at 9 n.1 (“The Court, however, has recognized that a judge is not absolutely immune from criminal liability ....”); O’Shea v. Littleton, 414 U.S. 488, 503, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) (“[W]e have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivation of constitutional rights. ... On the contrary, the judicially fashioned doctrine of official immunity does not reach so far as to immunize criminal conduct proscribed by an Act of Congress. . . .”) (internal quotation marks and citations omitted).[3],[4]
Still, some federal district courts and state courts have found judges to be judicially immune from criminal charges relating to the performance of judicial duties. See Chaplin, 54 F. Supp. at 934-35 (sustaining a judge’s plea at bar that he should be immune from indictment and prosecution for depriving a citizen of civil rights “under the color of any law” in judicial proceedings in his court); In re Petition of Dwyer, 486 Pa. 585, 406 A.2d 1355, 1360 (Pa. 1979) (finding “that the petitioners are quasi-judicial and/or quasi-prosecutorial officers . .. [and] in the absence of allegations of bad faith or corruption, the petitioners, in granting the extensions and variance, are insulated from criminal prosecution for the consequences of their actions”); Commonwealth v. Tartar, 239 S.W.2d 265, 266-67 (Ky. App. 1951) (holding that the circuit court properly sustained a demurrer to the indictment of a judge for misfeasance in office because “judges acting in their official capacities should be protected from harassment by either civil suits or criminal prosecutions”); In re McNair, 324 Pa. 48, 187 A. 498, 502 (Pa. 1936) (finding that magistrate judges “cannot be subjected to liability, civil or criminal, for any of their judicial acts, no matter how erroneous, so long as they act in good faith”).
I believe that, absent bribery or corruption, the importance of judicial independence warrants application of the doctrine of absolute judicial immunity to criminal liability for judicial acts performed within a judge’s *750 jurisdiction. Exposing judges to criminal liability for judicial acts performed within their jurisdiction poses the same type of threat to judicial independence as does exposing them to civil suit for money damages. As the courts that have found judges immune from criminal prosecution have noted, fear of criminal prosecution for judicial acts, like fear of civil suits by disgruntled litigants, could affect the ability of judges to act on their own convictions in fulfilling their judicial duties. See, e.g., Chaplin, 54 F. Supp. at 934 (“If judges are protected against civil actions for judicial acts, the reasons are more weighty that they should be protected against criminal actions.”); Dwyer, 406 A.2d at 1361 (“Judges made timid because of fear of criminal prosecutions for errors in their decisions make poor public servants.”); Tartar, 239 S.W.2d at 266 (“[Otherwise judges might be unduly burdened defending charges instigated by other governmental officers or aggrieved members of the public.”).
Moreover, as courts have noted with respect to judicial immunity from civil suits, there are other means of disciplining judges that do not pose such a threat to the independence of the judiciary. Judges are subject to removal. See U.S. Const. art. II, § 4; V.I.S.Ct.R. 209.6; Bradley, 80 U.S. at 354 (“But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed.”). Judges also are subject to disciplinary controls: all states now have judicial commissions to review complaints of judicial misconduct, and there are procedures within the federal courts for such review as well.[5] See John O. Haley, The Civil, Criminal and Disciplinary Liability of Judges, 54 Am. J. Comp. L. 281, 288-89 (2006). The Virgin Islands also has a judicial commission, the Commission on Judicial Conduct. V.I.S.Ct.R. 209.[6]
*751 The majority asserts, however, that there is “no support in history, law, or logic” for extending judicial immunity to criminal contempt. Ante at 24 n.4. The majority cites to Pulliam v. Allen, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984) for support. Ante at 23 n.4. However, in Pulliam, the Supreme Court held only that judicial immunity “is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity” or to an award of attorney’s fees under 42 U.S.C. § 1988.[7] 466 U.S. at 541-42. The Court did not directly address whether judicial immunity should bar criminal contempt proceedings against a judge. Nevertheless, Justice Powell, in dissent, voiced concern that “[t]he specter of contempt proceedings for alleged violations of injunctive orders is likely to inhibit unbiased judicial decisionmaking as much as the threat of liability for damages.”[8] Id. at 555 (Powell, J., dissenting). I echo Justice Powell’s concern and believe that there is a strong basis in common law and logic for extending judicial immunity to criminal contempt.[9]
*752 Here, Judge Kendall should be judicially immune from the criminal contempt charges. In writing the July 7, 2009, Opinion recusing himself from the Ford matter, Judge Kendall was exercising his judgment as to whether he could preside over this case in an impartial and fair manner and performing a quintessential judicial function by explaining his reasoning in a judicial opinion. Because this was a judicial act within his jurisdiction, he would be immune from civil suit arising from the same action. Just as exposing Judge Kendall to civil liability for such an action would threaten his ability to act upon his own convictions in performing his judicial duties, charging him with criminal contempt for this action would also undermine his judicial independence.[10]
For the foregoing reasons, I believe that the criminal contempt conviction here should be reversed on grounds of absolute judicial immunity.

 Because I believe that the issue of judicial immunity falls within the scope of the second issue on which we granted certiorari — whether the Virgin Islands Supreme Court erred in imposing criminal contempt on the charges of failure to comply with its mandamus order— and because it is an issue of great importance, I address the issue in this concurrence.

 To be sure, to the extent that offenses like corruption and bribery are not judicial acts within a judge’s jurisdiction, they do not fall within this proposed extension of the doctrine of judicial immunity. See Braatelien v. United States, 147 F.2d 888, 895 (8th Cir. 1945) (noting *748 that a judge “may be held criminally responsible when he acts fraudulently or corruptly”); McFarland v. Nebraska, 172 Neb. 251, 109 N.W.2d 397, 403 (Neb. 1961) (“[A]ny judicial officer who acts fraudulently or corruptly is responsible criminally, whether he acts under the law or without the law.”) (internal quotation marks and citation omitted). I include the qualifier of “absent corruption or bribery,” however, to ensure that such criminal acts by judges will not be covered by judicial immunity.

 To the extent that I propose that judges not be exempt from prosecution for the offenses of bribery or corruption, my position is consistent with that of the Supreme Court.

 In Ex Parte Virginia, 100 U.S. 339, 25 L. Ed. 676 (1878), the Supreme Court did deny judicial immunity to a judge indicted for excluding black citizens from jury lists in violation of the Civil Rights Act of 1875. However, the Court did so on the grounds that the act in question was ministerial, not judicial. Id. at 348.

 The majority notes that “superior courts routinely used their contempt power to hold inferior judges accountable for violating their writs and orders____” Ante at 22 n.4. However, the majority cites only to cases from the late nineteenth and early twentieth centuries and recognizes that this practice was common only until the mid-twentieth century when codes of judicial conduct and judicial disciplinary commissions were created. Ante at 22-23 n.4.

 Complaints arising out of other cases had been filed against Judge Kendall with the Commission on Judicial Conduct’s predecessor, the Commission on Judicial Disabilities. The *751 Commission on Judicial Disabilities was nullified by this Court’s decision in Kendall v. Russell, 572 F.3d 126, 52 V.I.1021 (3d Cir. 2009), in which we found that the provisions of the legislature’s act allowing the Commission to remove judges violated the separation of powers principle in the Revised Organic Act that served as the Constitution of the Virgin Islands. This decision was published on July 13, 2009. On December 10, 2009, the Supreme Court of the Virgin Islands adopted Supreme Court Rule 209, which created the new judicial disciplinary body, the Commission of Judicial Conduct. V.I.S.Ct.R. 209; V.I.S.Ct., Promulgation No. 2009-01 (Dec. 10, 2009).

 It is noteworthy that after the Supreme Court’s decision in Pulliam, Congress passed the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. § 1983 to bar injunctive relief against a judicial officer “unless a declaratory decree was violated or declaratory relief was unavailable” and 42 U.S.C. § 1988 to bar an award of costs, including attorney’s fees, against a judicial officer in any action “for an act or omission taken in such officer’s judicial capacity..., unless such action was clearly in excess of such officer’s jurisdiction.” Pub. L. No. 104-317, 110 Stat. 3847 (codified at 42 U.S.C. §§ 1983, 1988).

 The majority asserts that the Pulliam Court rejected Justice Powell’s dissenting argument about the danger that the threat of contempt proceedings poses to judicial independence. Ante at 23 n.4.1 believe that this is an overstatement of the Court’s position: the Court noted that a judge “risks contempt for violating the writ [of mandamus]” but did not directly respond to Justice Powell’s argument about the effect that the threat of contempt proceedings could have on judicial independence. Pulliam, 466 U.S. at 538 n.19.

 The majority also cites to United States v. Claiborne, 727 F.2d 842 (9th Cir. 1984), United States v. Hastings, 681 F.2d 706 (11th Cir. 1982), and United States v. Isaacs, 493 F.2d 1124 (7th Cir. 1974). Ante at 23-24 n.4. These cases all involve the prosecution of judges for corruption or bribery, which are precisely the types of criminal acts that I believe should not be covered by judicial immunity. In Hastings, the Eleventh Circuit noted “this is not a case in which a judge is prosecuted for acts in his official capacity undertaken in good faith. In such *752 a case, there may exist a common law immunity from criminal prosecution.” 681 F.2d at 711 n.12.

 Arguably, if Judge Kendall had recused himself from the Ford trial without writing an opinion, he might have been held in criminal contempt without a First Amendment defense, in which case the issue of judicial immunity could be dispositive.